ARTHUR E. LIFFITON, JR., as Successor Trustee of a Trust Created under the Will of ANNA C. HALPEN, Deceased, Respondent, *v.* NATIONAL SAVINGS BANK OF THE CITY OF ALBANY, Appellant.

Third Department, November 10, 1943.

*Bender, Ford, Benson & Comstock,* attorneys (*Roland Ford* of counsel), for appellant.

*Ainsworth & Sullivan,* attorneys (*Charles B. Sullivan* of counsel), for respondent.

HEFFERNAN, J. There is no serious dispute as to the facts in this case.

Anna C. Halpen died December 6, 1927, leaving a last will and testament which was admitted to probate in the Surrogate's Court of Albany County on December 13, 1927, and letters testamentary were issued to Peter J. Halpen, a brother of testatrix, the executor named in the will.

The will created two trust funds in identical amounts for the benefit of two nieces of testatrix — Ursula C. Halpen (now Ursula Moreland) born March 17, 1907, and Anne C. Halpen (now Anne Halpen Liffiton) born August 11, 1914. The executor was directed to deposit the trust funds "in some solvent savings bank of the city of Albany, N. Y. for the benefit of my said nieces until their arrival at the age of twenty-five years and upon their respective arrivals at such age, then the said sum, with all accumulations thereon, is to be paid to the niece so arriving at such age." One half of the residuary

estate was given to Halpen individually and the remaining one half was divided equally between the nieces.

The will also provided a contingent remainder interest in each trust to descendants, if any, in case of death before the age of twenty-five, or otherwise to the surviving niece.

Halpen made a final account as executor and on January 30, 1930, by the terms of the final decree he was directed to retain as testamentary trustee for Ursula and Anne the sum of $1,890.50 each, to be held in trust and paid over with accumulated interest thereon, in accordance with the terms of the will.

At the time of her death testatrix had a savings account with a balance of $3,067.87 in appellant bank. On December 15, 1927, Halpen filed with appellant a certificate evidencing his appointment and qualification as executor and thereupon appellant indorsed his name as executor upon the account.

On July 5, 1929, Halpen withdrew the balance in his account as executor by three separate orders, transferring $644.23 to a new account in the name of "Peter J. Halpen"; $1,300 to a new account in the name of "Peter J. Halpen, as Executor & Trustee under the Will of Anna C. Halpen, decd., in trust for Anne C. Halpen"; $1,300 to a new account in the name of "Peter J. Halpen as Executor & Trustee under the Will of Anna C. Halpen, decd., in trust for Ursula E. Moreland."

In the original pass book for Anne's account we find the following description: "In account with Peter J. Halpen as Executor & Trustee under the Will of Anna C. Halpen, decd., in trust for Anne C. Halpen (age 14 to receive money at age 25)". The notation in parenthesis appears in red ink.

It is conceded that Halpen never qualified as a testamentary trustee as required by section 167 of the Surrogate's Court Act.

On February 3, 1930, the balance in Anne's account was $1,329.40. On that date an order signed by Halpen to pay $1,300 of the balance to a new account was presented to one of appellant's tellers. The deposit slip contained the identical legend which appeared on the original pass book. The old pass book was canceled and a new one issued containing the same description of the account as that contained on the deposit slip.

On the same day Halpen withdrew the balance of the account amounting to $29.40 equalling the interest items.

As part of the same transaction Halpen deposited $442.48 to the credit of Anne's new account making a balance of $1,742.48

or $148.02 less than the amount which the decree on the final accounting required him to deposit and hold in trust as testamentary trustee.

While this action does not relate to Ursula's account the transactions between Halpen and appellant with reference to that trust have a bearing upon the question before us since examination of them shows that there were devious dealings relating to each trust occurring at the same time and with the same officer of appellant.

On February 3, 1930, Halpen withdrew from Ursula's account in cash the interest amounting to $29.40 and arranged with appellant to close the old account and to open a new savings account in identical name and form as the existing account and transferred thereto the balance of $1,300. The deposit slip for this account with the exception of the name and age contains the same notation which appeared on the slip relating to Anne's account opened the same day. Halpen also on the same day deposited an additional item of $463.82 in this account making a total of $1,763.82, or $126.68 less than the amount which the final decree directed him to deposit.

The second item deposited and credited to each account on this day resulted from the division of proceeds of checks for $1,100, which appellant cashed, $463.82 being credited to Ursula's account, $442.48 to Anne's account and the balance, $193.70, returned to Halpen in cash.

It thus appears that the testamentary trustee opened two new trust accounts with the appellant, through the same trust officer, involving identical forms of trust, for two sisters, with identical notations of the trust conditions as to payment to the beneficiary indorsed in red ink on each deposit slip.

On January 1, 1932, the trust account of Ursula had increased through interest credited to $1,922.23. On February 23, 1932, Halpen withdrew from this account by orders payable to cash $288.33, thereby reducing the balance to $1,633.90. Interest credited March 31st of that year made the balance $1,650.23.

Ursula became twenty-five years of age on March 17, 1932, and entitled to receive the trust fund.

On April 16, 1932, Halpen closed Ursula's account and opened a new account for her benefit. Appellant issued to him a new pass book crediting thereon as a single item the sum of $1,650.23. It is quite obvious that Halpen's reason for obtaining the new pass book was for the purpose of concealing from Ursula his illegal abstractions of $288.33 from her account the previous February.

About a month after her twenty-fifth birthday Ursula and her husband met Halpen at appellant bank for the purpose of obtaining her trust fund. The pass book was exhibited to her showing that she was entitled to $1,650. She refused to accept that amount and said that her attorney informed her that she should receive about $2,000. The teller, Halpen and a trust officer of the appellant told her that was all the money there was. The testimony shows that the teller and the trust officer then made an examination of various books and account cards after which Ursula was advised by them that there was no more money for her. She declined to accept the amount tendered and left the bank.

About May 9, 1932, Ursula, through an attorney, obtained a settlement from Halpen receiving the appellant's draft for $1,650 and $300 in cash. Appellant's records show that on May 9th Ursula's account was closed by issuance of a draft on Halpen's order payable to Ursula for $1,650.23. On the same day appellant permitted Halpen to withdraw $300 in cash from Anne's trust account to make up the balance of his settlement with Ursula.

Between April, 1932, and March, 1934, the appellant paid Anne's entire trust fund to Halpen through 101 separate orders ranging from $5 up to $300, which Halpen embezzled. Practically all withdrawals were in small sums of $5 and $10.

Anne never received any of the fund from Halpen and never learned of his peculations until after his death which occurred in 1936.

On April 5, 1939, plaintiff was appointed and qualified as successor trustee and thereupon instituted this action against appellant to recover the amount of Anne's trust fund. After a trial before the court, without a jury, plaintiff was awarded judgment for the full amount and from that judgment appellant has come to our court, contending that it should be absolved from liability on the ground that the moneys were withdrawn by the faithless trustee in due course of business, without notice or knowledge on appellant's part of the embezzlement.

The State has made stringent provisions for the administration of savings banks and bearing in mind the character of such institutions and the purposes for which they were formed, intrusted as they are with the savings of a multitude of poor people, there should be no relaxation of the rule requiring the officers and agents to exercise reasonable care and diligence in the performance of their duties. The law makes provision for the investment of deposits and the dominant purpose has

been to provide in this way for the safety of the money intrusted to them and to hold the officers intrusted therewith to a strict accountability. For honest errors of judgment made while acting with ordinary skill and prudence, measured according to the demands of the duties or business which they have taken upon themselves, they are not to be held liable. However when one deposits money in a savings bank he has the right to expect that those in control of the institution will, in the management of his property, exercise the same degree of care and prudence that men, prompted by self interest, generally exercise in their own affairs.

From the proof in this record it is reasonably certain that when appellant joined with Halpen on February 3, 1930, in opening new trust accounts for both Anne and Ursula and issuing new pass books in the same names and forms as the existing accounts, it then knew that Halpen's relation to both trust funds had become that of a testamentary trustee. The only inference which can be drawn from this transaction is that appellant was informed by Halpen that he had accounted as executor and desired to open new accounts in trust for both Anne and Ursula as testamentary trustee.

When appellant received from Halpen on that day the sum of $1,742.48 for deposit to an account in trust for Anne '' age 14 to receive money at age 25 '', it knew that Halpen was acting, or purporting to act, in the capacity of a testamentary trustee as to the sum so deposited, and it likewise knew from the express terms set forth upon the deposit slip and entered in connection with the title of the account in the pass book that the moneys so received by it were trust moneys belonging to an infant and that such moneys were to be held in trust and to accumulate until she was twenty-five years of age. These terms and conditions of the trust as to payment are clear through the notations thereof upon appellant's own records.

Under the provisions of the Banking Law appellant had no authority to receive this deposit from Halpen without proof that he was appointed trustee, had qualified and was lawfully acting as such. Subdivision 2 of section 237 of that law, so far as material here, provides: '' No savings bank shall accept any deposit for credit to any * * * trustee * * * named in a will or appointed by a court of competent jurisdiction, unless a certified copy of the will, order or decree of the court authorizing such deposits or appointing such *.* * trustee * * *, or a certificate of such appointment is filed with the savings bank, * * *.''

The appellant was chargeable with knowledge of this statute and of the provisions of section 167 of the Surrogate's Court Act. It is the purpose of this latter section to prevent a fiduciary from dealing with the funds of the trust until the *cestui* is adequately protected. Appellant's failure to assure itself of Halpen's authority directly deprived the *cestui* of the protection the statute was designed to give. It would have been impossible for Halpen to have robbed his niece if appellant had exercised that modicum of care and caution customarily exercised by all fiduciaries, namely, to assure itself of his *bona fide* representative capacity. The simplest inquiry would have disclosed that the alleged trustee was not legally constituted as such and that he was lacking any authority to handle and administer the funds of the trust. Notwithstanding these statutory provisions and in direct violation thereof, entirely unmindful of the information contained in its own records that Halpen's relation to the fund was that of a testamentary trustee, and ignoring the actual notices which its officers received from Ursula that Halpen was a dishonest trustee, it permitted him to steal Anne's entire trust fund by means of 101 separate orders payable to cash. We cannot escape the conviction that appellant by ignoring these facts and the information contained in its own records, and their necessary implications and also the express notice that this trustee was peculating from the trust, became a guilty participant in Halpen's embezzlement of Anne's trust funds; it thereby became privy to Halpen's fraud.

We have no hesitation in arriving at the conclusion that appellant joined with Halpen in a diversion of the trust funds with actual notice and knowledge of such diversion. Appellant's officers, if they had exercised ordinary care, had facts before them which should have aroused their suspicion, put them on their guard, and required them to exercise a degree of care commensurate with the evil to be avoided. They should have suspected, they should have inquired and hence are chargeable with the knowledge which the proper inquiry would have disclosed. (*Bischoff* v. *Yorkville Bank*, 218 N. Y. 106; *Fidelity & Deposit Co.* v. *Queens County Trust Co.*, 226 N. Y. 225; *Employers' Liability Assurance Corp., Ltd.*, v. *Hudson River Trust Co.*, 250 App. Div. 159, affd. as modified 276 N. Y. 542.)

Banks are uniformly held liable for participating in diversions of those acting in a fiduciary capacity, when such actors are without authority. For example a bank is liable for charging a corporate account with a check drawn by an officer without

authority. (*Moch Co.* v. *Security Bank*, 176 App. Div. 842, affd. 225 N. Y. 723.) Banks are likewise held responsible for withdrawals by public officials when such officers are not qualified to act in accordance with the statutory provisions. (*Employers' Liability Assurance Corp., Ltd.*, v. *Hudson River Trust Co., supra*.)

We are not impressed by appellant's plea that it acted in good faith and without knowledge of Halpen's sinister conduct. A child should hardly have been deceived by the machinations of this rogue, much less experienced bank officials.

The judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed, with costs. [See *post*, p. 840.]