OPINION OF THE COURT
Kaye, J.
A bank that allows a fiduciary to negotiate a check payable to him as fiduciary without first establishing his authorization to do so will not, without more, be liable to the beneficiary when the fiduciary exceeds his powers by negotiating the check.
In 1978, Robert Daniel Tyler, aged four, was injured while he and his family lived in Kentucky. His father, Paul E. Tyler, brought suit on his behalf, which was settled in October 1979 for $25,000. When the family relocated to New York, Paul retained a local attorney to assist in obtaining the settlement proceeds from Kentucky. On December 20,1979, Surrogate’s Court, Steuben County, appointed Paul Tyler general guardian of his son’s property. The letters of guardianship directed him “to collect, receive and hold all moneys received of the infant jointly with Columbia Savings Bank, Bath, New York, subject to the provisions of the SCPA 1708 and [ordered that] the guardian’s bond be dispensed with.” No provision was made for giving notice of these restrictions, and there is no evidence that either Paul Tyler or the bank received a copy of the letters of guardianship or knew of their contents.
On January 9, 1980, the Kentucky court ordered that the money be transferred to Paul Tyler as general guardian, and a check for $14,849.23 (the net recovery) was issued to the order of “Paul E. Tyler, Sr., Guardian of Property of Robert Daniel Tyler.” On February 13, 1980, Paul negotiated the check at the Painted Post, New York, branch of respondent Columbia Banking Federal Savings and Loan Association (“Columbia”). He deposited $11,000 of the cash he received into an account in his own name at Columbia’s Bath branch and purchased a car with the remaining $3,849.23. He then proceeded to spend the *437 $11,000 for a house and other family expenses, in his words, to “give Robert as well as the rest [of the family] the same kind of normal life that any family enjoys.”[1]
Paul failed for two years to file the required annual accountings under SCPA 1719. An investigation ordered by the Surrogate discovered that all but $27.99 of the settlement fund had been spent. This proceeding was commenced on October 19, 1982, by Samuel Knox, appointed guardian ad litem for Robert, seeking a judgment of joint and several liability against Paul Tyler for misappropriation of the funds, against counsel for failure to advise Paul of his duties and to explain the restrictions on his use of the funds, and against Columbia for its negligence in having negotiated the settlement check without first having determined the scope of the guardian’s powers. Service of process was never made on counsel.
On May 25, 1983, the Steuben County Surrogate held Paul Tyler and Columbia jointly and severally liable for the full amount of the settlement fund, removed Paul as guardian and appointed Samuel Knox in his stead (119 Misc 2d 750). On Columbia’s appeal, the Appellate Division unanimously reversed, finding no legal basis for the imposition of liability against the bank (101 AD2d 998), and this appeal followed. We agree with the court below that in the circumstances the bank is not liable for Paul’s misappropriation, and we therefore affirm the dismissal of the proceeding as against Columbia.
In Bradford Trust Co. v Citibank (60 NY2d 868), we held that “there is no requirement that a check payable to a fiduciary be deposited to a fiduciary account, and the fact that the instrument was not so deposited may not, without more, be relied upon as establishing a wrongful payment on the part of the depositary bank” (60 NY2d, at p 870; see, Uniform Commercial Code § 3-304 [2]). Our decision was grounded upon the Uniform Commercial Code which provides that “[a]n instrument made payable to a named person with the addition of words describing him * * * as [a] fiduciary for a specified person or purpose is payable to the payee and may be negotiated, discharged or enforced by him” (Uniform Commercial Code § 3-117 [b]; see also, Litchfield v Flint, 104 NY 543, 550; Davis v Garr, 6 NY 124, 133), and that *438 mere knowledge that the “person negotiating the instrument is or was a fiduciary” does not of itself give the purchaser of a negotiable instrument notice of any claims or defenses (Uniform Commercial Code § 3-304 [4] [e]). The conduct with which Columbia is charged — having negotiated a check payable to Paul Tyler in a fiduciary capacity without requiring deposit of the check in a fiduciary account — is thus permissible.
In general, a bank may assume that a person acting as a fiduciary will apply entrusted funds to the proper purposes and will adhere to the conditions of the appointment (see, Clarke v Public Natl. Bank & Trust Co., 259 NY 285, 288-289; see also, Bischoff v Yorkville Bank, 218 NY 106, 111, 113; Brady, Bank Checks § 12.1, at 12-2 [Bailey 5th ed]). A bank is not in the normal course required to conduct an investigation to protect funds from possible misappropriation by a fiduciary, unless there are facts — not here present — indicating misappropriation (see, Grace v Corn Exch. Bank Trust Co., 287 NY 94, 102-103; Aetna Cas. & Sur. Co. v Lafayette Natl. Bank, 35 AD2d 137, 141, affd mem 30 NY2d 638). In this event, a bank may be liable for participation in the diversion, either by itself acquiring a benefit, or by notice or knowledge that a diversion is intended or being executed (see, Bischoff v Yorkville Bank, 218 NY 106,112-113, supra; Raymond Concrete Pile Co. v Federation Bank & Trust Co., 288 NY 452, 458, adhered to on rearg 290 NY 611; Brady, Bank Checks § 12.2, at 12-4 [Bailey 5th ed], supra). No facts are before this court suggesting that Columbia had notice that Paul Tyler intended to, or did in fact, use the settlement proceeds for improper purposes. Consequently, Columbia cannot be charged with the misappropriation.
The dissent, ignoring Bradford, rests on the following premises, which are faulty: that there was an unscrupulous guardian who misused the funds for his personal interest; that the majority “in an unwarranted departure from stare decisis, disarms and displaces the protections accorded to infants by [Liffiton v National Sav. Bank, 267 App Div 32, affd mem 293 NY 799]”; and that the statutory provisions designed to safeguard trust funds for infants are thus defeated.[2]
The picture painted of a unscrupulous guardian is without factual basis. More to the point, nothing in the nature of the *439 transactions alerted the bank that Paul Tyler was misappropriating funds. And irrespective of his unquestioned good faith, there is a judgment against Paul Tyler in the full amount of his son’s fund, which he has undertaken to restore by salary deductions.
In concluding that the bank is not the fiduciary’s guarantor, the majority ignores neither controlling statutes nor case law. The dissent rests on Liffiton v National Sav. Bank (267 App Div 32, affd mem 293 NY 799) and Banking Law § 237 (l).[3] Liffiton is the only reported decision in this State which cites Banking Law § 237 (1) (then § 237 [2]). Significantly, neither party raised the case or the statute, and neither court below considered the case or the statute.
It is understandable that no reference has been made to Liffiton, which is distinguishable. In Liffiton, a bank failed to assure itself of a trustee’s authority to deal with trust funds, but it did so in disregard of information contained in its own records and notices to its officers that the trustee was dishonest. As the court concluded, the bank’s conduct actually facilitated the trustee’s embezzlement of the entire trust fund, which he had accomplished through 101 separate withdrawals payable to cash. While the court cited section 237 (1) (then § 237 [2]) of the Banking Law, it can hardly be said that liability was predicated on the statute. The common law provided the remedy. In view of the continuous, egregious course of conduct of the trustee, of which the bank was ‘aware, the court stated that it had “no hesitation in arriving at the conclusion that [the bank] joined with [the trustee] in a diversion of the trust funds with actual notice and knowledge of such diversion” (267 App Div, at p 38).
Nor should the statute be applied here for the first time to entitle a beneficiary to damages. The fact that a bank acts in violation of a regulatory statute does not of itself engender liability to beneficiaries for fiduciary misappropriations (see generally, New York Metro Corp. v Chase Manhattan Bank, 52 NY2d 732; Aetna Cas. & Sur. Co. v Lafayette Natl. Bank, 35 AD2d 137, affd mem 30 NY2d 638, supra). There is no indication that by section 237 the Legislature intended, in establishing guidelines for bank operations, to provide for private damage actions to recover moneys spent by fiduciaries in contravention of their powers. (See, Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 324-332.)
*440 Viewed with the clarity of hindsight, inquiry by the bank might have been simple, reasonable, effective or even customary in the industry — none of which has been established factually. But even such considerations would not serve to impose upon the bank a duty for which damages are recoverable.
Accordingly, we affirm the order of the Appellate Division, dismissing the petition against the bank, without costs.

. In a letter to the guardian ad litem (appellant), Paul wrote of the hopeless, impoverished condition he, his wife and four children lived in before receipt of the money. He listed the purchases made and offered to repay the funds over time. The items set forth in footnote 1 of the dissent, such as bedroom furniture, an electric blanket and clothes, were purchased for Robert only; the house, the trip, television set, carpeting and heating stove were for the family.

. The dissent in addition cites authorities from the law of agency, as well as procedures dealing with unauthorized signatures, neither of which are apposite. There is no question of apparent authority in this case, since the infant could not be a principal, and no question that Paul Tyler’s signature was genuine.

. No contention is made that private liability for damages to the infant could derive from SCPA 1708 (1).