590 So.2d 129 (1991)
GREAT SOUTHERN NATIONAL BANK and Bank of Hattiesburg
v.
Sue Lewis MINTER, Conservator of the Estate of Sylvia Slade Lewis.
No. 90-CA-116.
Supreme Court of Mississippi.
November 20, 1991.
*130 S. Robert Hammond, Jr., Nancy E. Steen, Bryant Colingo Williams Clark Ramsay & Hammond, Hattiesburg, for appellant.
Shirley Payne, Dennis L. Horn, Horn & Payne, Jackson, for appellee.
En Banc.
BANKS, Justice, for the Court:

I
This case presents the question of whether a bank is liable where it accepts for deposit to an attorney's trust account, on the attorney's endorsement, checks made payable to an estate, in care of, or "c/o", the attorney where the attorney is in fact the conservator of the estate and where the attorney subsequently misappropriates proceeds from the account including the proceeds of the checks in question. We hold that, without more, the answer is no. We therefore reverse the order of the trial court granting summary judgment against the bank and remand this matter for further proceedings.

II
Sue Lewis Minter, Conservator of the Estate of Sylvia Slade Lewis, (hereinafter "Minter") filed a complaint against Great Southern National Bank and Bank of Hattiesburg[1] (hereinafter "the Bank") alleging that pursuant to a settlement of a claim in the Circuit Court of Forrest County, Liberty Life Assurance Company of Boston, Massachusetts issued the following:
(1) A $125,000 check dated December 1, 1981, made payable to CONSERVATORSHIP OF SYLVIA SLADE LEWIS, which check was negotiated by Robert F. Drake completely without authority and due to the negligence or other wrongdoing of the Bank said Conservatorship never received any of the proceeds;
(2) A $17,500 check dated December 1, 1982, made payable to CONSERVATORSHIP OF SYLVIA SLADE LEWIS, which check was negotiated in such a manner that due to the negligence or other wrongdoing of the Bank said Conservatorship never received any of the proceeds;
(3) A $17,500 check dated December 1, 1983, made payable to CONSERVATORSHIP OF SYLVIA SLADE LEWIS, which check was negotiated in such a manner that due to the negligence or other wrongdoing of the Bank said Conservatorship never received any of the proceeds;
(4) A $17,500 check dated November 30, 1984, made payable to CONSERVATORSHIP OF SYLVIA SLADE LEWIS, which check was negotiated in such a manner that due to the negligence or other wrongdoing of the Bank said Conservatorship never received any of the proceeds;
(5) A $17,500 check dated November 27, 1985, made payable to CONSERVATORSHIP OF SYLVIA SLADE LEWIS, which check was negotiated in such a manner that due to the negligence or other wrongdoing of the Bank said Conservatorship never received any of the proceeds.
As a result of an automobile accident, Sylvia Slade Lewis suffered permanent brain damage and needed constant care and supervision. A suit filed on behalf of Lewis as a result of the accident produced the settlement proceeds here in question.
The Bank answered by attaching as Exhibit "A" a court order filed November 23, 1981, designating Robert D. Drake, attorney at law, as the Conservator of the Estate of Sylvia Slade Lewis, with Minter remaining as the conservator of the person of Sylvia Slade Lewis.
Minter moved for summary judgment above on September 6, 1989, and the Bank moved for the same October 23, 1989. The court granted summary judgment on December 8, 1989, and entered a $52,500 judgment plus prejudgment interest for Minter.[2] *131 The bank's motion for summary judgment was denied. The findings, in pertinent part, are as follows:
2. That there were three checks issued from Liberty National Assurance Company of Boston and drawn on the Shawmut Bank of Boston all made payable to the "Conservatorship of Sylvia Slade Lewis, c/o Robert F. Drake, Esquire," which clearly showed that they were intended for the conservatorship estate and were only being sent to Drake in his capacity as attorney and not as conservator or as payee thereof.
3. Two of said checks were endorsed by Drake alone as an individual and a third was endorsed by Drake as an individual and by the "Conservatorship of Silvia (sic) Slade Lewis" without any designation of any person or entity who was purporting to be endorsing it in the official capacity of the "Conservator" of the estate and all three checks were subsequently deposited to the personal account of Robert Drake.
4. That such endorsement of said checks constituted "unauthorized endorsements", as defined by the UCC, which were or should have been apparent to the Bank on the face thereof; and its acceptance thereof made the Bank liable to the Plaintiff, Payee herein.
5. That the form of the checks was sufficient to put the Bank on notice that Drake had no authority to endorse them in his own name; and that the Bank had, or should have had, knowledge that Drake was negotiating them as a fiduciary and should not have allowed him to deposit them to his own personal account.
(R. at 82-83).
The Bank appealed citing the following issues: (1) the lower court erred in entering summary judgment for the plaintiff based upon its determination that the Bank of Hattiesburg negotiated certain checks bearing an unauthorized endorsement; (2) the Bank was entitled to summary judgment based upon the undisputed facts which demonstrate that the Bank negotiated the checks in accordance with commercially reasonable standards; and (3) the award of pre-judgment interest on a tort claim for unliquidated damages was an abuse of the trial court's discretion.

III
The bank first argues that Robert Drake, as conservator of the estate, was the proper payee of the checks and the lower court erred in its determination that the Bank of Hattiesburg negotiated the checks under an unauthorized endorsement. The court designated Robert Drake Conservator of the estate of Sylvia Slade Lewis on November 23, 1981, and his duties included:
[D]isbursement and receipt of funds belonging to the Conservatorship ... to include but not limited to the receipt of any and all funds from Liberty Mutual Insurance Company, such authority to continue until further order of this Court.
The three checks in question were endorsed and negotiated during Drake's tenure as conservator. At issue here is whether or not Drake's endorsement was authorized *132 under the Uniform Commercial Code as set forth in Miss. Code Ann. §§ 75-3-101 to 805 (1972).
The checks are commercial paper under Miss. Code Ann. § 75-3-104 (1972) which reads as follows:
(1) Any writing to be a negotiable instrument within this chapter must

(a) be signed by the maker or drawer; and
(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this chapter; and
(c) be payable on demand or at a definite time; and
(d) be payable to order or to bearer.

(2) A writing which complies with the requirements of this section is

.....
(b) a "check" if it is a draft drawn on a bank and payable on demand.
Id. (emphasis added).
Additionally, Miss. Code Ann. § 75-3-110(1)(e) (1972) provides:
(1) An instrument is payable to order when by its terms it is payable to the order or assigns of any person therein specified with reasonable certainty. .. . It may be payable to the order of

(e) an estate, trust or fund, in which case it is payable to the order of the representative of such estate, trust or fund or his successors.
Id. (emphasis added).
Appellee Minter argues that the check proceeds belonged to Sylvia Slade Lewis and because her endorsement did not appear on any of them, then the Bank is liable. This argument is clearly without merit. The checks were not payable to Ms. Lewis but to her conservatorship. Any endorsement by Ms. Lewis would be wholly without effect. Ms. Lewis had been judicially declared incapable of handling her own affairs, hence the conservatorship.
Minter cites Berkheimers, Inc. v. Citizens Valley Bank, 270 Or. 807, 529 P.2d 903 (1974), as authority for the proposition that the Bank is liable where the absence of a payee's endorsement could have been readily detected by an examination of the check. Berkheimers is readily distinquishable. There involved was a check payable to joint payees, Berkheimers and Bauer & Bronec, which Citizens Valley Bank negotiated under Bauer & Bronec's sole endorsement. The court held the Bank liable for conversion under the following rationale:
Since the check could be negotiated only upon the proper endorsement of both payees, defendant's conduct in paying the entire proceeds to B & B alone without the endorsement of and to the exclusion of plaintiff, was an intentional exercise of dominion or control over the check which seriously interfered with plaintiff's right to proceeds of the check.
.....
The absence of plaintiff's endorsement could be readily detected by an examination of the instrument. For these reasons we do not believe defendant acted in a commercially reasonable manner even though it may have acted in good faith.
Berkheimers, 529 P.2d at 905.
Minter also argues that the words following the comma in the checks made payable to the "Conservatorship of Sylvia Slade Lewis, c/o Robert F. Drake, Esq." were descriptive and of no legal effect citing Swiss Baco Skyline Logging, Inc. v. Haliewicz, 18 Wash. App. 21, 567 P.2d 1141 (1977). At issue in Swiss Baco was the language "Emil Haliewicz, Swiss Baco Skyline Logging, Inc." which the plaintiff argued constituted joint payee language. Swiss Baco, 567 P.2d at 1147. The court held that the comma introduced a patent ambiguity and concluded that the drafter intended that the instrument was payable to Haliewicz unconditionally. Id.
Here there may have been a material ambiguity had Drake not been the conservator designated to receive the funds. He was the conservator, however, and as such he had the right to negotiate the checks, even if his name had not appeared in any manner. Miss. Code Ann. § 75-3-110(e) (1972). Minter's reliance on Swiss Baco is misplaced.
*133 One question not clearly answered in the record is whether the Bank knew of the court order making Drake conservator or did it simply rely on the language printed on the checks. Although that question is interesting it is not material. See, Knox v. Columbia Banking Federal Savings and Loan Association, 64 N.Y.2d 434, 477 N.E.2d 448, 488 N.Y.2d 146 (1985):
A bank which allows a fiduciary to negotiate a check payable to him as fiduciary without first establishing his authorization to do so will not, without more, be liable to the beneficiary when the fiduciary exceeds his powers by negotiating the check.
Knox, 488 N.Y.S.2d at 147, 477 N.E.2d at 449. Here Drake did not exceed his powers by negotiating the checks. He abused his powers by misapplying the proceeds.
It is clear then that the trial court erred in granting summary judgment in favor of Minter. Drake, as conservator, had a right to negotiate the checks in question. That leaves the question whether the bank was entitled to summary judgment.

IV
Ordinarily the denial of a motion for summary judgment is an interlocutory order appealable only with leave of the court. Kilgore v. Barnes, 490 So.2d 895 (Miss. 1986); Rule 5, Miss.Sup.Ct.Rules. This matter is before us on cross appeal, however, and we treat it for clarity and guidance on remand.
The bank argues that it was entitled to summary judgment based upon the undisputed facts which demonstrate that the Bank negotiated the checks in accordance with commercially reasonable standards. The undisputed facts are evidenced by the decree designating Drake as conservator and an affidavit of Jack Triggs, president of the Hattiesburg division of Great Southern National Bank, which reads in pertinent part as follows:
3. All funds sought to be recovered by the Plaintiff against this institution which were deposited into this bank were properly placed into a fiduciary account of Robert F. Drake, Conservator of the Estate.[3]

*134 4. At all times complained of herein, Robert F. Drake was a licensed practicing attorney, an officer of the Chancery Court of Forrest County, Mississippi, and the duly appointed Conservator of the Sylvia Slade Lewis Conservatorship.
5. At all times complained of herein, the Defendant, Great Southern National Bank had no knowledge, actual or implied, with respect to any appropriation of any funds by Robert F. Drake as Conservator, nor was there any way for this Defendant to have any notice thereof.
6. That all deposits and withdrawals alleged in the Complaint herein with respect to this Defendant were "properly payable" items, and that all deposits and withdrawals were concluded properly and within all "commercially reasonable" obligations of this Defendant.
The New York Court of Appeals faced a similar issue in Knox, supra. In Kentucky during 1978, Robert Daniel Tyler at age four was injured and his father, Paul E. Tyler, brought suit on his behalf which ended in a $25,000 settlement. Knox, 488 N.Y.S.2d at 147, 477 N.E.2d at 449. On December 20, 1979, after relocating to New York, a New York court appointed Paul Tyler general guardian of Robert Tyler's property and issued letters of guardianship which directed him to "collect, receive and hold all moneys received of the infant jointly with Columbia Savings Bank, Bath, New York, subject to the provisions of the SCPA 1708." Id. There was no evidence to demonstrate whether either the bank or Paul Tyler received copies of the letters. Id. On January 9, 1980, the Kentucky court ordered the transfer of a $14,849.23 check issued to the order of "Paul E. Tyler, Sr., Guardian of Property of Robert Daniel Tyler." Id. 488 N.Y.S.2d at 147-48, 477 N.E.2d at 449-50. Upon its receipt, Paul negotiated the check; deposited $11,000 into an account under his name at Columbia's Bath branch; and purchased a car with the balance. Id. 488 N.Y.S.2d at 148, 477 N.E.2d at 450. Paul failed to comply with the required annual accounting procedures and an investigation revealed that only $27.99 remained of the settlement fund. Id. Subsequently, the court appointed Samuel Knox as Robert's guardian ad litem and on October 19, 1982, Knox filed suit against Paul Tyler, his attorney and Columbia. Id. As a result, the court held Paul Tyler and Columbia jointly and severally liable for the full amount of the settlement fund. Id. On appeal, the New York Court of Appeals affirmed the appellate court's reversal of the judgment against Columbia. Id. The New York Court of Appeals held the following:
In general, a bank may assume that a person acting as a fiduciary will apply entrusted funds to the proper purposes and will adhere to the conditions of the appointment. A bank is not in the normal course required to conduct an investigation to protect funds from possible misappropriation by a fiduciary, unless there are facts  not here present  indicating misappropriation. In this event, a bank may be liable for participation in the diversion, either by itself acquiring a benefit, or by notice or knowledge that a diversion is intended or being executed. No facts are before this court suggesting that Columbia had notice that Paul Tyler intended to, or did in fact, use the settlement proceeds for improper purposes. Consequently, Columbia cannot be charged with misappropriation.
Id. 488 N.Y.S.2d at 148-49, 477 N.E.2d at 450-51.
The bank contends that it is a holder in due course because it had no knowledge, either actual or implied, that Drake was mishandling the funds from the settlement checks. Additionally, it is generally held that "a bank may assume that a person acting as a fiduciary will apply entrusted funds to the proper purposes and will adhere to the conditions of the appointment." Knox, 488 N.Y.S.2d at 451, 477 N.E.2d at 451. See also Hubbard v. Home Fed. Sav. & Loan Assoc., 10 Kan. App.2d 547, 704 P.2d 399, 403-04 (1985); Bank South v. Grand Lodge, 174 Ga. App. 777, 331 S.E.2d 629, 632 (1985).
According to the Restatement:

If the trustee deposits trust funds in a bank, the bank is liable for participation *135 in the breach of trust in receiving or in permitting the trustee to withdraw the trust funds, where the trustee commits a breach of trust in making the deposit or withdrawal, if, but only if, the bank received the deposit or permitted the withdrawal with notice of the breach of trust.

Restatement of Trusts § 324 (1935) (emphasis added).
This Court in Eyrich v. Capital State Bank, 67 Miss. 60, 6 So. 615 (1889) addressed a bank's liability and stated:
There ought to be either a fraudulent purpose on the part of the bank, or actual knowledge of a fraudulent design by another, shown before liability can be fixed on them for paying out funds on checks signed by him authorized to draw.
Eyrich, 67 Miss. at 73, 6 So. at 618.
Minter argues that the bank was placed on notice when Drake deposited the checks to his personal account, and that the bank's failure to inquire as to his authority precludes it from asserting a commercially reasonable defense. Minter bases her argument on Salsman v. National Community Bank of Rutherford, 102 N.J. Super. 482, 246 A.2d 162 (1968). In Salsman, plaintiff Odgers retained attorney Breslow to handle matters arising out of the death of her late husband. Salsman, 246 A.2d at 164. Specifically at issue were the proceeds from a $159,770.02 cashiers check. Id. at 165. Breslow wrote on the back of the check "Pay to the order of Estate of Arthur J. Odgers" which Odgers endorsed. Id. Under this special endorsement and without Odgers' knowledge, Breslow wrote "Estate of Arthur J. Odgers  for deposit Harold Breslow, Trustee" and under that Breslow's secretary wrote "For deposit Harold Breslow Trustee." Id. Breslow then mailed the check to the defendant Bank, who collected the proceeds and deposited them into a general trustee account. Id. Said bank never inquired into Breslow's fiduciary capacity, and this suit resulted after Breslow misappropriated the funds. Id. The Court held the bank liable for negotiating the check under an unauthorized endorsement, and its rationale was as follows:
The check in question was indorsed by the payee, Mrs. Odgers, to the order of the Estate of Arthur J. Odgers. There was no valid indorsement thereafter by the estate of Arthur J. Odgers. N.J.S. 12A:3-110(1)(e), N.J.S.A. provides that an instrument may be payable to the order of "an estate, trust or fund, in which case it is payable to the order of the representative of such estate, trust or fund * * *." The check was not indorsed by the administratrix of the estate the only person who had authority in law to indorse the check. Breslow was not a trustee of the estate, and the purported indorsement for the estate by "Harold Breslow, Trustee" was unauthorized and ineffective.
Id. at 166.
Again, Minter misses the boat as Salsman is clearly distinguishable. The culprit in Salsman was not acting in a fiduciary capacity. Unlike Drake, he had no authority whatever with regard to the estate made payee by the endorsement.
In order to be entitled to summary judgment, however the bank is required to demonstrate there is no genuine dispute of material fact, that is, a fact which if proved would allow recovery. Moreover, even where what is before the court does not indicate a genuine dispute of material fact and the movant is technically entitled to summary judgment, the trial court would nevertheless be justified in denying summary judgment when, in its view, a full exposition of the facts may result in a triable issue or is warranted in the interest of justice. Brown v. McQuinn, 501 So.2d 1093, 1095 (Miss. 1986).
Here, although Minter failed to file a response to the bank's affidavit, this Court is left with the view that the facts have not been sufficiently explored. The record does not indicate what, if any, discovery has been conducted, particularly with regard to the nature of the withdrawals made by Drake from his trust account and, what, if any, knowledge the bank had regarding Drake's general conduct which *136 might have put it on notice sufficiently to require action at some point which would have been of benefit to plaintiff. See, Liffiton v. National Sav. Bank, 267 App.Div. 32, 44 N.Y.S.2d 770, affd. mem. 293 N.Y. 799, 59 N.E.2d 35 (1944). Under the circumstances, we cannot say that the trial court abused its broad discretion to deny a motion for summary judgment.

V
Finally the bank questions the award of prejudgment interest contending that the damages were unliquidated. As the nature of the damages, if any, has not been established the chancellor will have an opportunity to revisit this issue should an award of damages be made. We therefore need not, and do not, reach this issue.
The lower court erred in its application of the law because (1) Drake's endorsement was authorized under Miss. Code Ann. §§ 75-3-110(1)(e) and 75-3-117(b) (1972); and (2) the bank is a holder in due course. Summary judgment in favor of Sue Lewis Minter, Conservator of the Estate of Sylvia Slade Lewis should be reversed and this case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and PITTMAN, JJ., concur.
McRAE, J., dissents without written opinion.
NOTES
[1] The Bank of Hattiesburg has been succeeded by Great Southern National Bank. The transactions here involved occurred with the Bank of Hattiesburg.
[2] The amount of the judgment is the amount of the last three checks for $17,500. The record does not reflect any disposition of the issues regarding the $125,000 and the first two $17,500 checks. Minter's motion for summary judgment was supported by attached copies of the last three checks and deposit slips and a report made to the court by the county administrator concerning his findings regarding Drake and various conservatorships, including the instant conservatorship. That report indicated that Drake had admitted keeping the $125,000 and all of the checks and that he had made certain payments to Minter and others for Lewis' expenses and care.

No full accounting appears of record. While nothing in the motion explicitly limits it to consideration of the three checks, no other checks were submitted and according to Minter's responsive brief to the bank's motion, her motion was directed solely at the issue whether the bank was liable due to an insufficient endorsement. This may well be an interlocutory appeal. See, Rule 54, Mississippi Rules of Civil Procedure; May v. VFW, 577 So.2d 372 (Miss. 1991). Neither party has raised the issue, however, and in the interest of judicial economy we treat the merits. Southern Farm Bureau Cas. Ins. v. Holland, 469 So.2d 55 (Miss. 1985).
[3] The checks in question demonstrate that Drake appeared to have one account at the Bank of Hattiesburg: the $17,500 check dated December 1, 1983, endorsed by "Robert F. Drake" and deposited in account number XXX-XXX-X in the name of Drake & Graber; the $17,500 check dated November 30, 1984, endorsed by "Robert F. Drake Conservatorship of Silvia (sic) S. Lewis" deposited in account number XXX-XXX in the name of Robert F. Drake, Attorney-at-Law, Legal Trust Account; and the $17,500 check dated November 27, 1985, endorsed by "Robert F. Drake" deposited in account number XXX-XXX in the name of Robert F. Drake, Attorney-at-Law, Legal Trust Account. This trust account is the only bank account mentioned in the record.

The question arises whether Drake should have maintained a separate account just for the conservatorship in question. Miss.R.Prof.Conduct 1.15(a) reads as follows:
A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person.
Miss.R.Prof.Conduct 1.15 comment (1990) states: "Separate trust accounts may be warranted when administering estate monies or acting in similar fiduciary capacities." Id.
The Model Code of Professional Responsibility DR 9-102(A) reads:
All funds of clients paid to a lawyer or law firm . .. shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein [with exceptions.]
ABA Comm. on Ethics and Professional Responsibility, Formal Op. 348 (1982) reads:
Historically, client funds entrusted to lawyers in the United States have been placed in non-interest-bearing bank checking accounts maintained by the lawyers separate from their own funds. * * * Because of the impracticability of establishing a separate account for each client, all client funds generally are commingled in the lawyer's trust account.
Id. (emphasis added).
It is not unusual, then, for clients' funds to be commingled in a lawyers trust account. That is not to say that a conservator meets his obligations to the ward when he leaves ward funds in a non interest bearing account. Initial deposit into such an account, however, would not appear to be such an unusual event as to put a bank on notice if potential wrongdoing.