895 A.2d 1242

MATSON INTERMODAL SYSTEM, INC. N/K/A/ MATSON INTE-
GRATED LOGISTICS, INC., PLAINTIFF v. KUBIS ENTERPRIS-
ES, LTD.; LEE KUBIS, INDIVIDUALLY AND AS AN AGENT
OF KUBIS ENTERPRISES, LTD.; LISA A. KUBIS, INDIVIDU-
ALLY AND AS AN AGENT OF KUBIS ENTERPRISES, LTD.;
ADMIRAL FREIGHT SERVICES, INC.; ADMIRAL TRANSPOR-
TATION, INC.; WILLIAM COLER, SR.; DAY OR NIGHT EX-
PRESS, INC. A/K/A DONE LOGISTICS, INC.; UNITRADE MAR-
KETING GROUP, INC.; COMMERCE BANK; PARKE BANK;
NATIONAL PENN BANK D/B/A FIRSTSERVICE BANK; BANK
OF AMERICA; AND COUNTY SAVINGS BANK, DEFENDANTS.

Superior Court of New Jersey
Law Division Middlesex County

Decided December 2, 2005.

*Ronald Horowitz,* for plaintiff.

*David L. Braverman,* for defendant Parke Bank (*Braverman, Daniels, Daskey, Ltd.,* attorneys).

HAPPAS, J.S.C.

The issue presented to the court is whether a check made payable to two payees, whose names appear on the check in vertical alignment separated by the symbol "c/o" is negotiable

individually by the first named payee; jointly, thus, requiring the endorsement of both the named payees; or alternatively, requiring the endorsement of any one of the named payees. All of the checks in issue were endorsed by the second named payee and paid by the payor bank. Plaintiff, the first named payee on the checks, instituted a cause of action for conversion against the payor bank.

The resolution of this matter is governed by reference to the Uniform Commercial Code. There are no cases in the State of New Jersey that discuss the impact of the use of the symbol "c/o." There is a paucity of case law on this issue in other jurisdictions and a consensus does not exist. This is a case of first impression in New Jersey.

Matson Intermodal System, Inc., ("Matson") is an intermodal freight transportation company, arranging on behalf of its accounts, rail and truck transportation nationwide. Matson engaged defendants, Lee Kubis and Lisa A. Kubis, and their company, Kubis Enterprises, Ltd., t/a the KEL Group ("KEL"), as their local agent to procure freight transportation business from accounts and to invoice the accounts. Admiral Transportation, Inc. ("Admiral") engaged Matson to transport the freight of Admiral's customers. Admiral issued a series of checks made payable to

MATSON INTERMODAL SYSTEM
C/O KEL GROUP
P.O. BOX 534
BERLIN, NJ 08009

All of these checks were drawn by Admiral-on its Parke Bank account, endorsed by KEL, deposited into KEL's Commerce Bank account and paid by Parke Bank.

On March 11, 2005, Parke Bank moved to dismiss the claims Matson asserted against it with prejudice pursuant to R. 4:6-2. On April 1, 2005, the court granted Parke Bank's motion to dismiss. Due to the inadvertence of plaintiff's counsel, the opposition of plaintiff was not received and considered by the court.

Matson filed a motion for reconsideration which was argued by counsel before the court on June 10, 2005. The court reconsidered its decision of April 1, 2005 and denied without prejudice Parke Bank's motion pending the depositions of representatives of Admiral. These depositions have now been completed.

The defendant, Parke Bank has renewed its motion to dismiss all counts in the Fourth Amended Complaint asserted against Parke Bank for failure to state a claim upon which relief can be granted. *R.* 4:6–2(e). The plaintiff has filed a cross-motion for summary judgment. Since matters outside the pleading have been presented to the Court, the motions shall be treated as motions for summary judgment and disposed of as provided by *R.* 4:46. *See R.* 4:6–2; *See also Wang v. Allstate Ins. Co.*, 125 *N.J.* 2, 9, 592 *A.2d* 527 (1991).

A movant will be granted summary judgment if the court finds, after reviewing the full motion record in the light most favorable to the non-moving party, *Strawn v. Canuso*, 140 *N.J.* 43, 48, 657 *A.2d* 420 (1995), that there is no genuine issue of material fact. *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 536, 666 *A.2d* 146 (1995). In *Brill*, the Supreme Court made clear that:

> a determination whether there exists a genuine issue of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [*Id.* at 540, 666 *A.2d* 146 (internal quotations and citation omitted).]

The *Brill* summary judgment standard is codified in our Court Rules:

> The judgment or order sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law. An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences there from favoring the non-moving party, would require submission of the issue to the trier of fact.
>
> [*R.* 4:46–2(c).]

The court does not assess the credibility of the parties' assertions. Rather, that is reserved for the trier of fact. However, as *Brill* emphasized, it is within the court's province "to determine whether there is a genuine issue for trial." *Id.* at 540, 666 *A.*2d 146 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 *U.S.* 242, 249, 106 *S.Ct.* 2505, 2511, 91 *L.Ed.*2d 202, 212 (1986)). The court must also assume the non-movant's version of the facts is true and give the non-movant the benefit of all favorable inferences. *Brill v. Guardian Life Ins. Co. of Am., supra,* 142 *N.J.* at 536, 666 *A.*2d 146.

The resolution of these pending motions is governed by reference to the Uniform Commercial Code since a check is a negotiable instrument. *N.J.S.A.* 12A:3–104; *Triffin v. Pomerantz Staffing Servs., LLC,* 370 *N.J.Super.* 301, 306, 851 *A.*2d 100 (App.Div. 2004). The underlying purposes of the Uniform Commercial Code (UCC) are:

(a) to simplify, clarify and modernize the law governing commercial transactions;

(b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

(c) to make uniform the law among the various jurisdictions.

[*N.J.S.A.* 12A:1–102(2); *Custom Commc'ns Eng'g, Inc. v. E.F. Johnson Co.,* 269 *N.J.Super.* 531, 536, 636 *A.*2d 80 (App.Div.1993).]

The tort of conversion requires an "unauthorized act of dominion over the property to the exclusion of the other person's rights." *Dynasty Bldg. Corp. v. Ackerman,* 376 *N.J.Super.* 280, 286, 870 *A.*2d 629 (App.Div.2005). The applicable provision of the UCC as it concerns conversion, *N.J.S.A.* 12A:3–420(a), provides:

The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument or a payee or endorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

The checks at issue in this case were not delivered to Matson. Rather, they were delivered to the KEL Group. For the purposes of this motion, Matson has presented evidence indicating that the

KEL Group was an agent for the purposes of securing payment. The Agreement for Independent Sales Representation indicates that one of the services to be provided by the KEL Group was to "follow up as necessary to secure payment from shippers of the shipping charges for those payments." Both parties admit that the KEL Group is an agent for delivery of the checks based on the language of the Agreement. Case law and the statute are clear that a payee or endorsee may bring a cause of action for conversion where delivery of the instrument is made to an agent. *N.J.S.A.* 12A:3–420a. *See Leeds v. Chase Manhattan Bank, N.A.,* 331 *N.J.Super.* 416, 422, 752 *A.2d* 332 (App.Div.2000) (citing *Interchange State Bank v. Veglia,* 286 *N.J.Super.* 164, 184–87, 668 *A.2d* 465 (App.Div.1995), *certif. denied,* 144 *N.J.* 377, 676 *A.2d* 1092 (1996) (finding standing by virtue of constructive delivery under the prior law, *N.J.S.A.* 12A:3–419)); *Humberto Decorators, Inc. v. Plaza Nat'l Bank,* 180 *N.J.Super.* 170, 174, 434 *A.2d* 618 (App.Div.1981). As such, Matson has standing to assert a cause of action for conversion against Parke Bank.

The next issue before the court is whether a check made payable to multiple payees, listed as payable to:

MATSON INTERMODAL SYSTEM
C/O KEL GROUP
PO BOX 534
BERLIN NJ 08009

is negotiable individually by Matson; jointly, thus, requiring the endorsement of all of the named payees; or alternatively, requiring the endorsement of any one of the named payees. The resolution of this issue is required because if the check is payable alternatively, then a claim of conversion will fail as a matter of law since the KEL Group would be entitled to payment. Likewise, if the Court finds that the use of the symbol "c/o" is ambiguous, then the application of *N.J.S.A.* 12A:3–110d would also require a finding that the check is payable to either party. The determination is important. If an instrument is to be payable jointly, all of the payees must participate in any negotiation of the check. But if

the instrument is found to be payable in the alternative, any one of the payees may negotiate the check.

The relevant portion of the UCC provides:

**12A:3–110.  Identification of person to whom instrument is payable**

a.  The person to whom an instrument is initially payable is determined by the intent of the person, whether or not authorized, signing as, or in the name or behalf of, the issuer of the instrument.  The instrument is payable to the person intended by the signer even if that person is identified in the instrument by a name or other identification that is not that of the intended person.  If more than one person signs in the name or behalf of the issuer of an instrument and all the signers do not intend the same person as payee, the instrument is payable to any person intended by one or more of the signers.

b.  If the signature of the issuer of an instrument is made by automated means, such as a check-writing machine, the payee of the instrument is determined by the intent of the person who supplied the name or identification of the payee, whether or not authorized to do so.

c.  A person to whom an instrument is payable may be identified in any way, including by name, identifying number, office, or account number.  For the purpose of determining the holder of an instrument, the following rules apply:

(1) If an instrument is payable to an account and the account is identified only by number, the instrument is payable to the person to whom the account is payable.  If an instrument is payable to an account identified by number and by the name of a person, the instrument is payable to the named person, whether or not that person is the owner of the account identified by number.

(2) If an instrument is payable to:

(a) a trust, an estate, or a person described as trustee or representative of a trust or estate, the instrument is payable to the trustee, the representative, or a successor of either, whether or not the beneficiary or estate is also named;

(b) a person described as agent or similar representative of a named or identified person, the instrument is payable to the represented person, the representative, or a successor of the representative;

(c) a fund or organization that is not a legal entity, the instrument is payable to a representative of the members of the fund or organization; or

(d) an office or to a person described as holding an office, the instrument is payable to the named person, the incumbent of the office, or a successor to the incumbent.

d.  If an instrument is payable alternatively to two or more persons, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument.  If an instrument is not payable alternatively to two or more persons, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them.  If an instrument payable to two or more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively.

[*N.J.S.A.* 12A:3–110.]

Subsection d provides that where any ambiguity between joint or alternative payees is present, the ambiguity should be resolved in favor of alternative construction. *Danco, Inc. v. Commerce Bank/Shore N.A.* 290 *N.J.Super.* 211, 216, 675 *A.*2d 663 (App.Div.1996) (applying prior version of UCC but finding that a virgule is not ambiguous and means "or"). Furthermore, the issuer's subjective intent is irrelevant. Rather, it is the objective intent set forth on the check by the issuer that is controlling as to the endorsements required [1]. *Id.* at 216, 675 *A.*2d 663. Whether or not an ambiguity exists is a decision to be made by the court as a matter of law. *Id.* at 220, 675 *A.*2d 663. Significantly, "unless [the issuer] makes it clear that endorsement by a single payee is unacceptable, persons dealing with the instrument should be able to rely on the single endorsement without suffering the risk of incurring liability. The [issuer] is in the best position to guard against the ambiguity and that is where the duty should be." *Id.* at 216, 675 *A.*2d 663. In the statutory scheme of Article 3 of the UCC, an instrument that is ambiguous about the relationship between designated payees is an instrument that is payable in the alternative. *N.J.S.A.* 12A:3–110(d). This represents a significant shift in policy reflected in the predecessor statute. *See* Official Comment, *U.C.C.* (Revised) § 3–110(d).

The checks at issue use neither "and" nor "or" in its designation of payees. Rather, the check uses the designation of "c/o" where the payees are listed in vertical alignment. The dictionary defines "c/o" as "care of." *The American Heritage Dictionary of the English Language,* (4th ed. 2004); *Merriam–*

---

[1] It should be noted that the parties deposed both William Colfer and Leonard Colfer from Admiral. However, neither gentlemen were issuers of the checks. Rather, the checks were issued by William Joseph Colfer, III, a son of William Colfer. William Colfer felt that the intent of Admiral was to only pay Matson. Conversely, Leonard Colfer was of the opinion that it was Admiral's intent that either KEL or Matson could endorse the check. William Colfer III's intent was ambiguous. Thus, even the subjective intent of Admiral could not be ascertained.

*Webster's Dictionary of Law* (1996). In its most literal sense, "care of" means to take charge of, oversee or manage. *The American Heritage Dictionary of the English Language*, (4th ed. 2004). In banking, the term "c/o" has also been used to mean "cash order"; whereas in accounting, the symbol has been used to mean "carried over."

In any event, under the current scheme of *N.J.S.A.* 12A:3–110(d), the issuer, through the use of "c/o" in a vertical alignment of payees, does not makes it unambiguously clear that endorsement by a single payee is unacceptable. The use of "c/o" in a vertical alignment also does not objectively identify whether the checks are payable to Matson, the KEL Group, jointly or in the alternative.

Additionally, there are no cases in the State of New Jersey that discuss the import of the use of the symbol "c/o." There is a paucity of case law on this issue in other jurisdictions and a consensus does not exist. In *Schmitz v. Firstar Bank Milwaukee,* 260 *Wis.*2d 24, 658 *N.W.*2d 442 (2003), *reconsideration denied* 262 *Wis.*2d 672, 664 *N.W.*2d 594 (2003), the Wisconsin Supreme Court remanded a matter back to the trial court for further proceedings as it related to the bank's potential liability for payment with one endorsement on a check issued to:

Eric M. Schmitz
c/o Georgetown Financial
10134 North Port Washington Road
Mequon, Wisconsin 53092

Unfortunately, the Wisconsin Supreme Court provided no detailed analysis on this case. The court did not discuss section 3–110, nor conclude as to who was the payee, but remanded the issue to the trial court for a determination of who constitutes the payee under the facts of the case.

In *Great Southern Nat'l Bank v. Minter,* 590 *So.*2d 129 (Miss. 1991), the court was faced with the issue as to whether a bank could be held liable where it accepts for deposit to an attorney's trust account, on the attorney's endorsement, checks made pay-

able to "Conservatorship of Sylvia Slade Lewis, c/o Robert F. Drake, Esq.," where the attorney was, in fact, the conservator of the estate and where the attorney subsequently misappropriates proceeds from the account including the proceeds of the checks in question. While the court found that the attorney had the authority to endorse the checks, the denial of summary judgment for the bank was affirmed. The question to be resolved before judgment for the bank could be entered is whether the bank had in any manner been put on notice that it needed to inquire about the conduct of the fiduciary. The *Minter* court indicated that a bank would not be responsible for a trustee's breach of trust in the use of funds unless the bank had actual notice of the default:

> If the trustee deposits trust funds in a bank, the bank is liable for participation in the breach of trust in receiving or in permitting the trustee to withdraw the trust funds, where the trustee commits a breach of trust in making the deposit or withdrawal, if, but only if, the bank received the deposit or permitted the withdrawal with notice of the breach of trust.
>
> [*Id.* at 134–35, (quoting *Restatement of Trusts,* § 324 (1935)).]

The court held that the trustee's placing of conservator funds into his attorney trust account did not create the necessary notice. *Id.* at 135. Still, the court upheld the refusal to enter a summary judgment for the bank. The court was uncertain whether discovery had been completed, as the record was ambiguous on that point. Implicit in the court's ruling is the finding that the check was payable in the alternative to either payee. However, the *Minter* decision is readily distinguishable in that the attorney was the conservator and he had the authority under a separate Mississippi statute to endorse the check as payee, akin to *N.J.S.A.* 12A:3–110(c)(2)(a). In the matter now before the Court, there is no indication on the face of the check that there is a fiduciary relationship between the payees or that Parke Bank had any actual knowledge of any alleged default of the KEL Group.

The Defendant has also relied on *Holifield v. BancorpSouth, Inc.,* 891 *So.*2d 241 (Miss.Ct.App.2004), *petition denied,* 892 *So.*2d 824 (Miss.2005). However, this case is also distinguishable. In *Holifield,* investors brought suit alleging, in part, that a bank

allowed many of the checks made payable to a trustee to be deposited to his personal account, not endorsed by the trustee in his fiduciary capacity. The court, relying on revised section 3–110(c) of the UCC and the Official Comments, found that the trustee was the payee, "even without clarity as to the beneficiary of the trust."

Likewise, Defendant's reliance on *Bank South v. Grand Lodge of Free & Accepted Masons*, 174 *Ga.App.* 777, 331 *S.E.*2d 629 (1985), is misplaced because the bank was complying with the written authorization of a customer, provided to the bank, that allowed withdrawals on a trustee's signature. The authorization was not limited to withdrawals and deposits for designated purposes. Additionally, the Georgia statute allowed payment directly to a fiduciary. In the present matter, the checks do not indicate in any expressed manner that the KEL Group was acting as a fiduciary.

In the present instance, there is a complete absence of any indication whether the checks were payable alternatively or jointly. The listing of names on the checks does not contain the word "or." Similarly, the listing of the names on the checks does not contain the word "and." The use of the symbol "c/o" on a check, without any further qualification such as trustee or representative, does not objectively indicate whether there are joint or alternative payees. Additionally, the parties on the checks are listed in vertical alignment. *See generally Pelican Nat'l Bank v. Provident Bank*, 381 *Md.* 327, 849 *A.*2d 475, 480–486 (2004) (summarizing case law and concluding that vertical alignment payees are payable in the alternative under the current Code section). Given the complete absence of any indication as to whether the checks were intended to be payable alternatively or jointly, the court finds that the checks were ambiguous as to whether they were payable to Matson, the KEL Group, or both. *N.J.S.A.* 12A:3–110(d). Matson's argument that KEL Group is merely an addressee and not a payee is without merit given that the KEL Group is listed in the payee section of the checks. Furthermore,

this issue alone creates an ambiguity. Accordingly, Parke Bank did not convert the checks when it paid with only the endorsement of the KEL Group. Therefore, the Court will grant Parke Bank's motion for summary judgment and deny Matson's motion for summary judgment.

It is the opinion of the court that this ruling will further the intent of *N.J.S.A.* 12A:3–110. One obvious purpose of subsection d is to provide a bright-line rule for how checks with ambiguous payee designations should be treated. This purpose would be frustrated if it were necessary to resort to extrinsic evidence of custom, practice or the subjective intent of the issuer in order to determine whether a check was payable jointly or alternatively. To avoid the need to resort to extrinsic evidence, subsection d sets forth a simple and straight-forward rule: unless the check on its face is unambiguously payable jointly, it is deemed payable alternatively. *Danco, supra,* 290 *N.J.Super.* at 216, 675 *A.2d* 663. As the *Danco* Court noted, "unless the maker makes it clear that endorsement by a single payee is unacceptable, persons dealing with the instrument should be able to rely on the single endorsement without suffering the risk of incurring liability. The maker is in the best position to guard against the ambiguity and that is where the duty should be." *Id.* at 216, 675 *A.2d* 663. The issuer is in the best position to avoid the use of ambiguous punctuation, symbols, abbreviations and vertical alignment. To require a payor bank, collecting bank or depository bank to conduct a detailed inquiry as to the subjective intent of the issuer would have a chilling effect on the banking industry.

Finally, Parke's motion for sanctions is denied based on the fact that this issue is a case of first impression in the State of New Jersey.