851 A.2d 100 (2004)
370 N.J. Super. 301
Robert J. TRIFFIN, Plaintiff-Appellant,
v.
POMERANTZ STAFFING SERVICES, LLC, Defendant-Respondent, and
Bank of New York, Amilcar Chiucas, Rogelio Padilla, Roberto Ssolares, Mauricio A. Mendez, Fernando Gonzalez and Martin Gomez, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued March 30, 2004.
Decided June 29, 2004.
*101 Robert J. Triffin, appellant, argued the cause pro se.
Lani M. D'Agostino, Short Hills, argued the cause for respondent (Budd, Larner, Rosenbaum, Greenberg & Sade, attorneys; Ms. D'Agostino, of counsel and on the brief).
Before Judges COBURN, WELLS and C.S. FISHER.
The opinion of the court was delivered by FISHER, J.A.D.
In this case, we are called upon to determine whether an innocent party, whose check stock was imitated and whose signature was forged, can be held liable when another innocent party pays that check in good faith. We answer that question in the negative and affirm.
On April 20 and 21, 2002, Friendly Check Cashing Corp. was presented with eighteen counterfeit checks, in amounts ranging between $380 and $398, purporting to have been issued by defendant Pomerantz Staffing Services, LLC on its account with defendant Bank of New York. Each check bore Pomerantz's full name and address and a facsimile signature of "Gary Pomerantz." Also printed on the face of each check was a warning: "THE BACK OF THIS CHECK HAS HEAT SENSITIVE INK TO CONFIRM AUTHENTICITY." Without examining the checks as suggested by this warning, Friendly cashed the checks, which the bank returned unpaid and stamped: "COUNTERFEIT" and "DO NOT PRESENT AGAIN."
Friendly assigned any causes of action arising from the dishonoring of these checks to plaintiff Robert J. Triffin, who filed suit against Pomerantz, the Bank of New York and the individual payees on the eighteen checks. Plaintiff made no attempt to effect service on the payees and voluntarily dismissed his claim against the bank. Plaintiff and Pomerantz, the remaining parties, filed cross-motions for summary judgment. The trial judge granted Pomerantz's motion and dismissed the action.
We start with the signatures on the face of the checks, which purport to have been made by Pomerantz. Pomerantz claimed, and plaintiff did not dispute, that it did not sign the checks which also did not come from its check stock. Since "[a] person is not liable on an instrument unless the person signed the instrument," or the instrument was signed by another in a representative or authorized capacity, N.J.S.A. 12A:3-401(a), the Uniform Commercial *102 Code must be examined to determine what constitutes a signature which will obligate a drawer in these circumstances to pay an instrument.
The Uniform Commercial Code, with its interest in the expeditious movement of funds through the use of checks and other negotiable instruments, declares that a document is "signed" when it includes "any symbol executed or adopted by a party with present intention to authenticate a writing." N.J.S.A. 12A:1-201(39). The importance of the authentication requirement was explained by the drafters of the Code in the following way:
The inclusion of authentication in the definition of "signed" is to make clear that as the term is used in this Act a complete signature is not necessary. Authentication may be printed, stamped or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead. No catalog of possible authentications can be complete and the court must use common sense and commercial experience in passing upon these matters. The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing.

[N.J.S.A. 12A:1-201(39) Uniform Commercial Code comment (emphasis added).]
See also N.J.S.A. 12A:3-401(b) ("A signature may be made manually or by means of a device or machine, and by the use of any name, including a trade or assumed name, or by a word, mark, or symbol executed or adopted by a person with present intention to authenticate a writing."). Since the emphasis is not on the manner in which a symbol, representing a signature, is made, but is on the signer's "present intention to authenticate the writing," it is clear that a forged signature cannot convey the intention of the drawer to authenticate the writing.
Even forged signatures, however, have some significance in determining liability and the risk of loss imposed by the Uniform Commercial Code. That is, the Code does not place forgeries in a class by themselves but includes them within the definition of "unauthorized" signatures. N.J.S.A. 12A:1-201(43) ("`Unauthorized' signature or indorsement means one made without actual, implied, or apparent authority and includes a forgery."). In setting the bounds of liability regarding an instrument containing an "unauthorized" signature, N.J.S.A. 12A:3-403(a) declares that an "unauthorized signature is ineffective except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value," N.J.S.A. 12A:3-403(a).
The drafters' comments to the Code have not entirely clarified the extent to which this provision applies. There is also scant case law on the subject. Nevertheless, we conclude, as the plain language of N.J.S.A. 12A:3-403(a) demonstrates, that only the malefactor can be held liable on a forged or counterfeit instrument; that is, as the statute expressly states, the unauthorized signature is ineffective "except as the signature of the unauthorized signer." See Perini Corp. v. First Nat'l Bank, 553 F.2d 398, 404 (5th Cir.1977) ("The forgery does not operate as the ostensible drawer's signature.") Since some malefactor signed Pomerantz's name on these checks, then that malefactor can be held liable, but not Pomerantz. See Henry J. Bailey and Richard B. Hagedorn, Brady on Bank Checks: The Law of Bank Checks,¶ 28.01 (Pratt ed., 2004); Payne v. White, 101 A.D.2d 975, 477 N.Y.S.2d 456, *103 458-59 (App.Div.1984).[1]
Plaintiff presented no sworn statements or other evidential material in opposition to Pomerantz's sworn statements that the checks did not come from its check stock and the signatures embossed on the instruments were not Pomerantz's. Accordingly, it was undisputed that the forged signatures were "unauthorized" and could not impose liability on Pomerantz for these counterfeit checks.[2] We, thus, affirm the summary judgment entered in favor of Pomerantz.
Even if the Code were to permit liability on a drawer whose signature has been forged, plaintiff would still be obligated to show that Friendly was a holder in due course. For the following reasons, we conclude that the undisputed facts do not permit Friendly to claim the status of holder in due course.
A holder in due course is "one who takes an instrument for value, in good faith, and without notice of dishonor or any defense against or claim to it on the part of any person." Triffin v. Quality Urban Hous. Partners, 352 N.J.Super. 538, 541, 800 A.2d 905, 907 (App.Div.2002). Of particular importance is N.J.S.A. 12A:3-302(a)(1), which further defines "holder in due course" as "the holder of an instrument if ... the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity."
Our resolution of the application of N.J.S.A. 12A:3-302(a)(1), and the claim that Friendly was a holder in due course, is illuminated by our earlier decision in Triffin v. Somerset Valley Bank, 343 N.J.Super. 73, 777 A.2d 993 (App.Div. 2001). There, we affirmed a summary judgment entered in favor of plaintiff where, like here, he was assigned the rights of a check cashing entity to sue on dishonored checks. The checks in Somerset Valley were allegedly issued by Hauser Co., which in the ordinary course of its business, signed its checks through the use of a facsimile signature, like Pomerantz. While Hauser argued that the checks were unauthorized and forged, we also recognized that Hauser failed to oppose plaintiff's summary judgment motion with "anything about the appearance of the checks to place the check cashing company on notice that any check was not valid" and that an examination of the checks revealed that the forged signature "was identical to Hauser Co.'s authorized facsimile signature." Id. at 85, 777 A.2d at 1000. In the absence of any question or irregularity about the checks themselves or the circumstances surrounding the transactions, we concluded in Somerset Valley that plaintiff's assignor was a holder in due course as defined by N.J.S.A. *104 12A:3-302(a)(1). The case at hand, however, presents the obverse counterpart to Somerset Valley, differing significantly because the record here contains undisputed evidence that the checks were counterfeit, and appeared to be so, when presented to Friendly, plaintiff's assignor.
Once the validity of a signature is denied in the pleadings, the burden of "establishing validity is on the person claiming validity." N.J.S.A. 12A:3-308(a); Somerset Valley, supra, 343 N.J.Super. at 85, 777 A.2d 993. Because Pomerantz disputed the validity of the signatures on the checks, it became incumbent upon plaintiff to show that the signatures were valid by showing an absence of "evidence of forgery or alteration" on the face of the instruments. In addition, a holder in due course must satisfy both a subjective and an objective test of good faith, Maine Fam. Fed. Credit Union v. Sun Life Assur. Co. of Canada, 727 A.2d 335, 340 (Me.1999), requiring a consideration of the holder's honesty in fact and observance of reasonable commercial standards, N.J.S.A. 12A:3-103(a)(4); Travelers Indem. Co. v. Good, 325 N.J.Super. 16, 24, 737 A.2d 690, 695 (App.Div.1999). When the Uniform Commercial Code placed the burden of proving the validity of a signature upon the person asserting validity, N.J.S.A. 12A:3-308(a), it created a standard by which the legitimacy of a check is judged by its appearance, N.J.S.A. 12A:3-302(a)(1), and in requiring that the holder take the instrument in good faith, N.J.S.A. 12A:3-302(a)(2), the Code deemed relevant an examination of the honesty, the state of mind, the experience, and the reasonableness of the conduct of the alleged holder in due course.
In this case, plaintiff did not claim that Friendly examined the checks to determine whether they had heat sensitive ink and plaintiff made no attempt to explain this failure. Each check directed the holder to touch the check to confirm its authenticity, advising that, because of the heat sensitive ink, the logo "should fade when touched." Plaintiff did not dispute Pomerantz's assertion that the counterfeit checks did not contain heat sensitive ink and that their bogus nature would have been revealed by simply touching the checks. Unlike Somerset Valley, the evidence in this case was undisputed that the checks bore, when presented to Friendly, evidence that they were not authentic.[3] We are satisfied that the failure to utilize the heat sensitive test described on the face of the instrumentswhich, if utilized, would have unquestionably revealed that the checks were counterfeitprecluded Friendly, as a matter of law, from claiming holder in due course status. A party who fails to make an inquiry, reasonably required by the circumstances of the transaction, so as to remain ignorant of facts that might disclose a defect cannot claim to be a holder in due course. General Inv. Corp. v. Angelini, 58 N.J. 396, 403-04, 278 A.2d 193, 196-97 (1971).
This result is further compelled by the fact that the party claiming to be a holder in due course was in the business of cashing checks. It is reasonable, in considering whether the instruments were received in good faith and whether the holder comported with reasonable commercial standards, that the holder be expected to *105 fully examine the front and back of the instrument and, where the instrument purports to contain a method by which its authenticity may be tested, that the holder actually utilize that method. While this failure would likely preclude any holder of these instruments from claiming holder in due course status, it particularly precludes entities in the business of cashing checks.[4] Accordingly, we reject plaintiff's contention that this information was irrelevant. Instead, we hold that it is commercially unreasonable for a check cashing entity to fail to utilize the heat sensitive test when so cautioned on the face of the check.
Plaintiff also misguidedly argues that Pomerantz's contract with the bank impacts upon these issues. This contract authorized the bank to honor and pay, without limit and without inquiry, checks drawn on the account "regardless of by whom or by what means the actual or purported facsimile signature thereon may have been affixed thereto, if such a signature resembles the facsimile specimen filed with the Bank." Contrary to plaintiff's contentions, the contract governs only the relationship between the account holder and the bank, and purports to place the risk of loss on the account holder if the bank were to pay a check containing a signature resembling the filed facsimile specimen. The rights and liabilities of Pomerantz and the bank governed by this contract were never triggered since the bank dishonored all the checks in question.
Affirmed.
NOTES
[1] We hasten to observe that this case does not involve a holder's claim that a person, such as the drawer, has failed "to exercise ordinary care [which] substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument." N.J.S.A. 12A:3-406(a). In addition, we note that such negligence only precludes such a person "from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection." Ibid. As indicated herein, Friendly cannot be deemed a holder in due course and, thus, could not benefit by any negligence on Pomerantz's part.
[2] In this context, a counterfeit check is the equivalent of a forged check. Brady on Bank Checks, supra, ¶ 28.03. Indeed, at common law, the words "counterfeit" and "forged" were virtually synonymous, ibid., and our Criminal Code also defines "forgery" broadly so as to include not only the imitating of a drawer's signature but also the false creation or presenting of a document purporting to be the check of another. See N.J.S.A. 2C:21-1.
[3] Plaintiff also incorrectly argues that the heat sensitive ink instructions prohibit these checks from being considered as negotiable instruments. Since each check is payable to a bearer for a fixed amount, on demand, and does not indicate any other undertaking by the person promising payment other than the payment of money, the checks constituted negotiable instruments. N.J.S.A. 12A:3-104. The heat sensitive ink instructions did not represent conditions on the maker's undertaking but presented, for the benefit of any future holder, the opportunity to examine the checks' authenticity.
[4] Plaintiff is in the business of purchasing dishonored negotiable instruments. See Quality Urban, supra, 352 N.J.Super. at 540, 800 A.2d at 906; Somerset Valley, supra, 343 N.J.Super. at 78, 777 A.2d at 996. But his knowledge about the instruments at the time of the assignment is irrelevant. As the assignee of Friendly's cause of action, plaintiff stands in Friendly's shoes and his claim is determined by Friendly's status at the time it negotiated the checks. Quality Urban, supra, 352 N.J.Super. at 542, 800 A.2d at 907.