**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2320-16T4

ROBERT J. TRIFFIN,

      Plaintiff-Appellant,

   v.

COMDATA NETWORK, INC. a/k/a
COMCHECK,

      Defendant-Respondent,

   and

MICHAEL HOLDER, JAMES OWENS and
WILLIAM E. HOLSTER,

      Defendants.

_____

      Argued May 30, 2018 — Decided June 13, 2018

      Before Judges Fisher and Natali.

      On appeal from Superior Court of New Jersey,
      Law Division, Special Civil Part, Atlantic
      County, Docket No. DC-5380-15.

      Robert J. Triffin, appellant, argued the cause
      pro se.

      Adam A. DeSipio argued the cause for
      respondent (DLA Piper LLP, attorneys; Adam A.
      DeSipio, on the brief).

PER CURIAM

Plaintiff Robert J. Triffin — the assignee of two entities that cashed three counterfeit "comcheks," in the amounts of $100, $1146.20, and $708.92 — commenced this action against defendant Comdata Network, Inc., which refused to honor these comcheks. The suit was dismissed by way of summary judgment, and Triffin appeals, arguing in a single point that the judge erred in "assum[ing] the material facts needed" to support Comdata's contention that Triffin's assignors could not be holders in due course because they failed to heed the warnings on the counterfeit comcheks. We find insufficient merit in Triffin's contentions to warrant further discussion in a written opinion, R. 2:11-3(e)(1)(E), and add only the following few comments about some aspects of Triffin's arguments.

The record reveals that a comchek is, in Comdata's words, "a payable-through draft product drawn from" accounts maintained by Comdata's customers. Those customers, as Comdata asserted, could elect to utilize an authorization process, which directs the person or entity presented with a comchek as to how to ensure the instrument's validity. That process is described in the warnings on the face of the comcheks:

> NOTE: This draft is not valid and will not be honored without obtaining an authorization number before cashing or accepting payment. To obtain this number, call 800-741-3030.

                    DO NOT CASH BEFORE CALLING

                    IMPORTANT: THIS DRAFT WILL NOT BE HONORED
                    WITHOUT GOVERNMENT ISSUED PHOTO IDENTIFICA-
                    TION BEING RECORDED TO THE RIGHT (SEE REVERSE
                    SIDE FOR EXAMPLES)

On the back is another warning:

                    Do not provide funds to payee before obtaining
                    an authorization number by calling toll-free
                    800-741-3030. It is very important not to
                    accept a COMCHEK with a prior authorization
                    code unless you call COMCHEK at the number
                    above to confirm its validity.

No one disputes that the three comcheks in question were counterfeit or fraudulent. The undated $100 check was not endorsed by anyone and there is no evidence Triffin's assignor was presented with photo identification of the person who presented the comchek for payment. The other two comcheks were drawn on accounts long closed. The $1146.20 check, which bore a 2014 date, was drawn on an account closed at least ten years earlier; the $708.92 check bore a 2015 date and was drawn on an account closed for at least eight years. The authorization codes on both those checks were invalid.

In seeking summary judgment, Comdata relied on the failure of Triffin's assignors to heed the comcheks' many warnings. In granting summary judgment, Judge James P. McClain correctly adhered to our holding in <u>Triffin v. Pomerantz Staffing Servs.,</u>

LLC, 370 N.J. Super. 301, 309 (App. Div. 2004), that a check-cashing entity which paid a counterfeit check could not be a holder in due course when it "fail[ed] to make an inquiry, reasonably required by the circumstances of the transaction." We also observed in Pomerantz that check-cashing businesses — such as Triffin's assignors here — are held to a higher standard when a court considers whether their actions were commercially reasonable. Id. at 309-10.

In arguing against the application of this principle, Triffin relies on N.J.S.A. 12A:3-104(a); he claims comcheks are not negotiable instruments because they do not constitute, in his words, "an unconditional order for payment." We reject this contention because these comcheks express "an unconditional promise or order to pay a fixed amount of money." Ibid. To be sure, these comcheks contained a specific methodology for ensuring their validity, but the promise to pay remained unconditional. The same was true in Pomerantz. The only difference between this case and Pomerantz lies in the particular mechanics for ensuring authenticity; the check in Pomerantz advised that it incorporated "heat sensitive ink," the examination of which would "confirm authenticity." Id. at 304. Triffin's claim failed in Pomerantz because his assignor would have known the check was a counterfeit if it had made that cursory examination. Here, the assignors would

have determined the fraudulent nature of the presented comcheks by making a toll free telephone call. Those are distinctions without a difference.

We lastly consider Triffin's argument that Comdata did not present sufficient evidence to support its affirmative defense that his assignors were not holders in due course. In moving for summary judgment, Comdata relied on its vice-president's certification, which claimed Triffin's assignors could not have heeded the comcheks' warnings because, if they had called the toll free number, they would have learned the accounts were closed or the purported authentication numbers were false. Triffin argues that to sustain a contention that his assignors were not holders in due course, Comdata was required to certify that it reviewed its telephone records and ascertained that no such calls were made by his assignors. Again, we disagree.

Brill[1] does not impose a burden on summary-judgment movants to brush away every jot and tittle. To the contrary, Brill recognized that the summary-judgment procedure delineated in our Court Rules, R. 4:46-1 to -6, was "designed to provide a prompt, businesslike and inexpensive method of disposing" of cases lacking in genuine issues of material fact. Id. at 530 (quoting Judson v.

---

[1] Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520 (1995).

Peoples Bank & Tr. Co. of Westfield, 17 N.J. 67, 74 (1954)). It was enough in this instance for Comdata to assert that the circumstances unequivocally demonstrated the assignors' failure to heed the comcheks' warnings; Comdata was not obliged to search its telephone records to support the obvious implication of the facts presented. Comdata's certification sufficiently conveyed the necessary facts and made it incumbent on Triffin to provide sworn statements to the contrary to defeat summary judgment. Triffin provided nothing like that and, consequently, the judge properly granted summary judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

6

A-2320-16T4