**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4946-18

ROBERT J. TRIFFIN,

     Plaintiff-Appellant,

v.

THETA HOLDING
COMPANY, L.P.,
EUROPEAN METAL
GROUP, and ARMANDO
PEÑA, individually and
t/a EUROPEAN METAL
GROUP,

     Defendants,

and

THETA HOLDING
COMPANY, L.P.,

     Third-Party Plaintiff-
     Respondent,

v.

LUIS PEÑA,

     Third-Party Defendant.

_____

SCARINCI & HOLLENBECK,
LLC,

     Respondent.

_____

Argued September 27, 2021 – Decided October 19, 2021

Before Judges Vernoia and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-9027-17.

Robert J. Triffin, appellant, argued the cause pro se.

Robert E. Levy argued the cause for respondent (Scarinci & Hollenbeck, LLC, attorneys; Peter R. Yarem, of counsel and on the brief).

PER CURIAM

Plaintiff Robert J. Triffin, an attorney, appeals from a March 1, 2019 order granting defendant Theta Holding Company, LP (Theta) summary judgment on his claim that Theta, as drawer of a $15,000 check made payable to defendant European Metal Group (EMG), is obligated to honor the check under N.J.S.A. 12A:3-414. The check was first presented to 144 Enterprises, LLC, trading as City Check Cashing, and dishonored because Theta stopped payment on the check. Plaintiff also appeals from a May 25, 2019 order directing him to pay $5,262.50 in Rule 1:4-8 sanctions for the counsel fees Theta incurred with its

2

counsel Scarinci & Hollenbeck, LLC (the law firm) opposing plaintiff's motion for reconsideration of the February 5 and 21, 2018 orders denying his motions to quash deposition subpoenas and a subpoena duces tecum. We affirm both orders.[1]

## I.

The facts are derived from evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to plaintiff. H.C. Equities, LP v. Cnty. of Union, 247 N.J. 366, 380 (2021). In 2015, Theta hired EMG to "perform construction services." On June 17, 2016, Theta issued a $15,000 check to EMG, which was ostensibly left in a stolen truck. On June 21, 2016, defendant Luis Peña,[2] a driver for EMG,

---

[1] At oral argument before us, plaintiff raised the issue of standing to challenge a statute, relying on Crusco v. Oakland Care Ctr., Inc., 305 N.J. Super. 605 (App. Div. 1997). In Crusco, we considered the issue of "whether plaintiff may [have] base[d] a wrongful discharge claim upon the provision in the Ombudsman Act prohibiting retaliatory acts, N.J.S.A. 52:27G-14(a)." Id. at 614. We held it was "abundantly clear" there was "no private cause of action for wrongful discharge under the Ombudsman Act" because the plaintiff was not part of the class that the statute was intended to benefit, and there was no evidence the Legislature intended to create a private cause of action under the statute. Id. at 614-15 (citing In re State Comm'n of Investigation, 108 N.J. 35 (1987)). After careful consideration, we conclude the Crusco holding is not germane to our analysis in the matter under review.

[2] Parties who share a last name with other parties are referred to by their first names for the ease of reference. By doing so, we intend no disrespect.

A-4946-18

informed Theta that his truck and the check, which was inside, were stolen. That same day, Luis cashed the check with 144 Enterprises, LLC, trading as City Check Cashing (Enterprise), on EMG's behalf. Simultaneously, Luis requested a replacement check from Theta and asked Theta to stop payment on the first check, which it did. Luis picked up a second $15,000 check from Theta on June 21, 2016.

When Luis cashed the first Theta check with Enterprise, it "had a certified copy of a corporate resolution [prepared by] EMG" requiring "all members be present when cashing a check." On June 21, 2016, the president, secretary, shareholder and director of EMG was defendant Armando Peña, Luis' father. The record shows Luis was not a member of EMG; he was not mentioned in the EMG resolution; and Enterprise did not have a separate corporate resolution authorizing him to present a check on EMG's behalf. Enterprise claimed it was unaware Theta had stopped payment on its first check and had Enterprise contacted Theta prior to cashing it, Enterprise would not have completed the transaction. The record shows Enterprise failed to contact Theta or its bank before cashing the first Theta check.

On March 3, 2017, plaintiff purchased Enterprise's rights to the first Theta check, as well as fourteen other checks, for the sum of $4750 by way of an

4

assignment agreement.  On April 20, 2017, plaintiff filed a complaint against defendants in the Essex County Special Civil Part seeking to enforce Theta's dishonored check.  On October 13, 2017, the matter was removed to the Law Division.

On October 26, 2017, Theta filed an answer to the complaint, cross-claims, and a third-party complaint against Luis.  Theta alleged plaintiff lacked the requisite legal status of a holder in due course to enforce its dishonored $15,000 check to EMG against itself.

On December 20, 2017, plaintiff moved to quash Theta's subpoena to depose Lovy Santos, an Enterprise teller working on the day Enterprise cashed Theta's dishonored check.  On February 5, 2018, Judge Annette Scoca denied plaintiff's motion to quash, and on February 21, 2018, the judge issued an amended order compelling the deposition of Santos to proceed on March 13, 2018.

On February 26, 2018, plaintiff filed a motion for reconsideration of the February 5, and 26 orders, which was denied by Judge Scoca on March 16, 2018. In the interim, the judge denied Theta's initial motion seeking sanctions premised upon plaintiff's alleged frivolous motion for reconsideration.  On April 20, 2018, Theta renewed its motion for sanctions.  Relying on its attorney's

5

certification, Theta argued it had "strictly complied with all the procedural requirements of <u>Rule</u> 1:4-8(b)(1)" and plaintiff's motion for reconsideration was "completely frivolous" because he "did nothing more than attempt to reargue his [m]otion."

On May 11, 2018, Judge Scoca granted Theta's renewed motion for sanctions. Before a memorializing order was entered, plaintiff filed opposition, with the judge's permission, on May 21, 2018, maintaining Theta lacked standing to pursue discovery. Nonetheless, on May 25, 2018, the judge ordered plaintiff to pay $5,262.50 in frivolous litigation sanctions in the form of counsel fees to the law firm.

Following the close of discovery, on November 20, 2018, Theta moved for summary judgment and to dismiss plaintiff's complaint. Theta argued that section thirteen, N.J.S.A. 17:15A-47, of the Check Cashers Regulatory Act of 1993 (CCRA), N.J.S.A. 17:15A-30 to -52, barred plaintiff from collecting payment from Theta on its first issued check because the Uniform Commercial Code (UCC) limits plaintiff's recovery to Luis under N.J.S.A. 12:3-403(a). On December 7, 2018, plaintiff filed opposition to Theta's motion and challenged the court's subject matter jurisdiction over his claim.

A-4946-18

On March 1, 2019, the parties appeared before Judge Thomas M. Moore for oral argument. In his comprehensive oral decision, after recognizing the standards for summary judgment, Judge Moore explained the CCRA applies and provides:

> that no licensee or any person acting on behalf of a licensee shall cash a check which is made payable to a payee which is other than a natural person unless the licensee has on file a corporate resolution or other appropriate documentation indicating that the corporation, partnership or other entity has authorized the presentment of a check on its behalf and the federal taxpayer identification number of the corporation, partnership or other entity.

The judge continued his explanation:

> [Plaintiff], of course, was involved in the Triffin v. Liccardi case, 417 N.J. Super. 450 [453] [(App. Div. 2011)]. In that case, in my view, the [c]ourt decided whether [plaintiff] was a holder in due course after acquiring a check that was in violation of the CCRA of 1993. In that case, Liccardi Ford issued a check to an employee, Mr. Stallone, but withheld the check on suspicion that he was actually embezzling funds from the company. At [], Mr. Stallone purloined the check and cashed it at J.C.N.B. Check Cashing, Inc. but upon discovery that Stallone purloined the check Liccardi immediately issued a stop payment on the check. [Plaintiff] acquired the dishonored check from J.C.N.B., sued Stallone and Liccardi for the amount of the check. The trial court determined that the check was post-dated which put J.C.N.B. on notice that there was a claim against collection and found that J.C.N.B.

A-4946-18

was not a holder in due course. The trial court then granted summary judgment.

The [c]ourt analyzed the matter and began by laying out relevant law and explaining that:

> "Under the [UCC] Act N.J.S.A. 12A:3-302A, to be a holder in due course one must take an instrument for value in good faith and without notice of dishonor or any defense against or claim to it on the part of the person."

Quoting the Triffin v. Quality Urb. House case, 352 N.J. Super. 538 at 541 [(App. Div. 2002),] the [c]ourt explained:

> "[Plaintiff] did not take the Liccardi check as a holder in due course because he purchased the instrument with notice that [it] had been dishonored."

Further, the [c]ourt explained that:

> "If J.C.N.B. was a holder in due course when it obtained the check from Stallone it could have signed its interest in the check to [plaintiff] and he could, in turn, enforce J.C.N.B. rights as it[s] assignee."

The [c]ourt acknowledged that in Triffin v. Pomerantz Staffing, 370 N.J. Super. 301[] [(App. Div. 20[0]4)]:

> "We denied holder in due course status to an assignor who failed to comply with instructions on the face of the check to test whether the ink on the check was heat sensitive."

8

In that case, the [c]ourt determined that it is reasonable that the holder be expected to fully examine the front and back of the instrument and where the instrument purports to contain a method by which its authenticity may be tested, that the holder actually utilized the method for Liccardi at 460-461.

Here, I don't think it's disputed, it's not disputed or I find no dispute that the first Theta check was made payable to EMG. EMG has a corporate resolution in place that requires "all members be present when cashing a check." Very clear on the document, Armando . . . was the only member listed on the corporate resolution and the only member authorized to cash checks. Armando . . . in fact, no dispute of fact, did not cash this check and Enterprise, therefore, violated the CCRA by cashing this check for L[uis]

. . . .

I think there's no doubt in my mind and I think the [c]ourt has the ability to come to that determination. I don't think it usurps anyone's banking commission's authority to make a determination that [Enterprise] was not a holder in due course. Even by assignment [plaintiff] cannot assert the rights of a holder in due course.

In granting Theta's motion for summary judgment, the judge found it was not liable to plaintiff for payment of the first check. Under the CCRA, the judge concluded "an unauthorized signature is ineffective except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value . . . ." Since Enterprise was never a holder in

9

due course because it violated the CCRA, likewise the judge determined that plaintiff could not be a holder in due course either. A memorializing order was entered. This appeal ensued.

On appeal, plaintiff argues:

> (1) Judge Moore erred in granting summary judgment to Theta and ignored the distribution of powers provision in Article III of the New Jersey Constitution and case law, which preempts prior precedent addressing the CCRA; and

> (2) Judge Scoca abused her discretion in awarding sanctions and denying plaintiff's motion for reconsideration.

II.

We review an order granting summary judgment under the same standard that trial courts apply when ruling on a motion for summary judgment. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)); ADP, LLC v. Kusins, 460 N.J. Super. 368, 399 (App. Div. 2019) (citing Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014)). Courts ruling on summary judgment are required to view the evidence presented in the light most favorable to the non-moving party to determine whether the materials presented "are sufficient to permit a rational

10

factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

If "there is no genuine issue as to any material fact challenged and . . . the moving party is entitled to a judgment . . . as a matter of law," then summary judgment is appropriate. R. 4:46-2(c). In other words, summary judgment is properly granted "[w]hen the evidence 'is so one-sided that one party must prevail as a matter of law.'" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill, 142 N.J. at 540).

The non-moving party bears the affirmative burden "to make a complete and comprehensive showing why summary judgment should not be entered." Lombardi v. Masso, 207 N.J. 517, 556 (2011) (Rivera-Soto, J., dissenting). To satisfy this burden, the non-moving party "must 'demonstrate by competent evidential material that a genuine issue of fact exists.'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 479-80 (2016) (quoting Robbins v. Jersey City, 23 N.J. 229, 241 (1957)). The court must then determine "whether a rational factfinder could resolve the alleged disputed issue in favor of the non-moving party," id. at 481 (quoting Perez v. Prof'ly Green, LLC, 215 N.J. 388, 405-06 (2013)), bearing in mind "neither the motion court nor an appellate court can ignore the

elements of the cause of action or the evidential standard governing the cause of action." Bhagat, 217 N.J. at 38.

Plaintiff argues that the distribution of powers clause contained in Article III of the New Jersey constitution and the holding in Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l High Sch. Dist., Monmouth Cnty., 199 N.J. 14 (2009), invalidate the holding in Triffin v. Liccardi Ford, Inc., which Judge Moore relied on in granting summary judgment to Theta. However, Theta contends that plaintiff's "reliance on Klumb is misguided" and the well-established principles in Liccardi Ford give it standing to raise a violation of the CCRA defense and preclude plaintiff from asserting holder in due course status.

In Klumb, the Court addressed the interpretation of a teacher's pension statute relative to reinstatement of a teacher previously on disability leave. The Court held that its goal is to promote the Legislature's intent when interpreting a statute, and when the plain language produces a "clear and unambiguous result," the process is concluded. Id. at 23-4 (quoting Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195 (2007)) (citing Bd. of Educ. of Sea Isle City v. Kennedy, 196 N.J. 1, 12 (2008)). If an ambiguous result should arise, then a court should look to extrinsic evidence like legislative history to discern the Legislature's intent. Id. at 24 (citations omitted).

A-4946-18

Relying on <u>Klumb</u>, plaintiff argues that "this court's holding in [<u>Liccardi Ford</u>] . . . unconstitutionally modified, or otherwise rewrote by judicial fiat the plain language of N.J.S.A 12A:3-414 to make a licensed check casher's compliance [with] the [CCRA] a requirement for a plaintiff to enforce the dishonored check warranties in N.J.S.A. 12A:3-414." We disagree.

In <u>Liccardi Ford</u>, we did not discuss N.J.S.A. 12A:3-414. <u>See</u> 417 N.J. Super. 453 (App. Div. 2011). Instead, like the matter under review, we were faced with determining whether a licensee under the CCRA, who cashes a dishonored check in violation of the statute gains, and transfers by assignment of rights to the dishonored check, holder in due course status. <u>Id.</u> at 455.

The first statute relevant to our analysis is N.J.S.A. 12A:3-414, which deals with the obligation of the drawer[3] when the drawee[4] is a holder in due course. Whether Enterprise was a holder in due course is purely a legal determination. Under the UCC, a holder in due course takes the negotiable instrument free of the obligor's claims and defenses that do not arise from his

---

[3] "Drawer" is defined as "a person who signs or is identified in a draft as a person ordering payment." N.J.S.A. 12A:3-103(a)(3).

[4] "Drawee" is defined as "a person ordered in a draft to make payment." N.J.S.A. 12A:3-103(a)(2).

own behavior. A holder is a person in possession of a negotiable instrument payable to him or to a bearer. Under the UCC, to qualify as a holder in due course, the holder of an instrument must have taken "the instrument for value, in good faith, without notice that the instrument is overdue or has been dishonored,"[5] or "contains an unauthorized signature." N.J.S.A. 12A:3-302(a)(2). "Good faith" is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing." N.J.S.A. 12A:3-103(a)(4). It is the "without notice that the instrument . . . contains an unauthorized signature" language that governs our decision. N.J.S.A. 12A:3-302(a)(4).

The second statute relevant to our analysis is the CCRA, N.J.S.A. 17:15A-30 to -52, which prescribes the responsibilities of check cashers when presented with a negotiable instrument. Enterprise is licensed by the New Jersey Department of Banking to cash checks. As such, it is subject to the CCRA. Under the CCRA, no licensee or person acting on behalf of a licensee is permitted to,

> [c]ash a check which is made payable to a payee which
> is other than a natural person unless the licensee has on

---

[5] Whether plaintiff had notice that the first Theta check was dishonored is not at issue on appeal. Furthermore, the assignment agreement between plaintiff and Enterprise states, "Seller warrants that at the time it cashed the referenced checks; it had no notice that the referenced checks had been dishonored."

file a corporate resolution or other appropriate documentation indicating that the corporation, partnership or other entity has authorized the presentment of a check on its behalf and the federal taxpayer identification number of the corporation, partnership or other entity.

[N.J.S.A. 17:15A-47(a).]

There is no dispute Enterprise did not have on file a corporate resolution or other appropriate documentation authorizing Luis to cash checks on behalf of the payee identified on the Theta check. There is equally no dispute Enterprise was aware of this deficiency and also aware of its obligation under the law to cash checks made payable to Armando only.

Clearly, a licensee's[6] cashing of a check in violation of the CCRA does not satisfy the licensee's obligation of "good faith" under the UCC as a matter of law. In Valley Nat'l Bank v. P.A.Y. Check Cashing, 378 N.J. Super. 234, 234-35, we affirmed the trial court's finding in Valley Nat'l Bank v. P.A.Y. Check Cashing, 378 N.J. Super. 406, 425 (Law Div. 2004) (citing N.J.S.A. 17:15A-47(a)) that the licensee "cashed a check payable to a corporation without having a corporate resolution or other appropriate documentation indicating that

---

[6] "Licensee" is defined as "a person who holds, or who should hold, a license pursuant to" the CCRA. N.J.S.A. 17:15A-31. A license under the CCRA "authorizes the licensee to cash checks for a fee." Ibid.

the presentment was authorized." As a consequence of this failure to comply with the CCRA and its own internal guidelines, we also concluded the licensee "did not . . . satisfy [its] obligation of 'good faith' under the UCC." Valley Nat'l Bank, 378 N.J. Super. at 234-35.

Here, Enterprise similarly violated the CCRA, precluding it from obtaining holder in due course status. A "natural person" does not include a "partnership, professional association, company, corporation, or other business entity" identified as a payee on a check. N.J.S.A. 17:15A-31. Moreover, our administrative code defines "[a]ppropriate documentation" as "a corporate resolution filed with the Secretary of State, Federal taxpayer identification number, filed New Jersey Certificate of Authority, filed trade-name certificate or other readily verifiable official document." N.J.A.C. 3:24-1.3.

Saliently, if a licensee is not a holder in due course, then it cannot transfer holder in due course status in a check to an assignee. Liccardi Ford, 417 N.J. Super. at 457. In Liccardi Ford, we held that examining the face of a check to discern whether it was postdated was a required, reasonable commercial standard under the CCRA. Id. at 458. Thus, the licensee violated the "express terms" of the CCRA when it failed to "examine the face of a [post-dated] check and refrain from cashing it," precluding holder in due course status. Ibid. Since

16

the licensee was not a holder in due course, the assignee was not either and could not enforce the dishonored check against the drawer.  Id. at 461.

Analogous to the licensees in Liccardi Ford and Valley Nat'l Bank, Enterprise "failed to observe reasonable commercial standards, because it 'violated the [CCRA], which establishes reasonable commercial standards for check cashing licensees.'"  Liccardi Ford, 417 N.J. Super. at 459 (quoting Valley Nat'l Bank, 378 N.J. Super. at 425).  Moreover, Enterprise cashed Theta's check made payable to a corporation, EMG, without appropriate documentation.[7] There is no genuine issue of material fact that Enterprise did have the EMG Resolution on file when Luis cashed the first Theta check, and Luis was not authorized to cash the check on EMG's behalf.  As Judge Moore highlighted, "Armando . . . was the only member listed on the corporate resolution and the only member authorized to cash checks" and "Armando . . . did not cash this check."  And, Enterprise did not possess a separate corporate resolution authorizing Luis to cash the check either.  As did the licensee in Valley Nat'l Bank, "Enterprise . . . violated the CCRA by cashing this check for [Luis]."  See N.J.S.A. 17:15A-47(a).

---

[7]  As noted above, Luis "also subsequently cashed the second Theta check[,] which had not been stopped."  However, the second Theta check is not in dispute on appeal.

Here, Enterprise failed to meet reasonable commercial standards by violating the CCRA, thus precluding holder in due course status based on lack of good faith under the UCC. N.J.S.A. 12A:3-302(a)(2). Consequently, plaintiff's argument that Liccardi Ford "unconstitutionally modified . . . the plain language of N.J.S.A. 12A:3-414" is rejected. Based upon our de novo review, Judge Moore properly granted Theta's motion for summary judgment.

III.

An abuse of discretion arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Servs., 779 F.2d 1260, 1265 (7th Cir. 1985)). Our review of a trial court's imposition of sanctions is similarly reviewed for an abuse of discretion. Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005) (citing R. 1:4-8). We likewise review a judge's decision to impose discovery sanctions and award attorney's fees as a discovery sanction under an abuse of discretion standard. Shore Orthopaedic Grp., LLC v. Equitable Life Assurance Soc'y of U.S., 397 N.J. Super. 614, 629-30 (App. Div. 2008); Innes v. Carrascosa, 391 N.J. Super. 453, 496 (App. Div. 2007).

18

A judge, in his or her discretion, has the inherent authority to sanction a party for behavior that is vexatious, burdensome, and harassing. See Brundage v. Est. of Carambio, 195 N.J. 575, 610 (2008) (recognizing the inherent power of courts to sanction parties as means of enforcing ordinary rules of practice); Abtrax Pharm., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 513 (1995) (recognizing the inherent power to punish for discovery violations); Dziubek v. Schumann, 275 N.J. Super. 428, 440 (App. Div. 1994) (reasoning a court's inherent power may include awarding attorney's fees in the form of a sanction). Although the power to sanction should be invoked sparingly, the circumstances presented in the matter under review support Judge Scoca's award of attorney's fees as the proper sanction for vexatious and harassing motion practice relative to the discovery permitted by her February 5 and 21, 2018 orders.

We conclude there is sufficient, credible evidence in the record to support Judge Scoca's award of attorney's fees as a sanction against plaintiff in accordance with Rule 1:4-8. Plaintiff's reconsideration motion was founded on a wholly unsupportable legal argument based on two cases, Valley Nat'l, 378 N.J. Super. 234 (App. Div. 2004), and First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419 (App. Div. 2007). These cases provide that the holder of a dishonored check cannot seek damages against a check casher who violates the

CCRA. And, these cases do not stand for the proposition that a party to an action to collect on a dishonored check under the CCRA is barred from taking appropriate discovery. Moreover, Theta did not seek relief against plaintiff under the CCRA but sought the sanctions under Rule 1:4-8(b)(1).

The frivolous litigation statute permits a court to award reasonable counsel fees and litigation costs to a prevailing party in a civil action if the court determines that the complaint, counterclaim, cross-claim, or defense is frivolous. N.J.S.A. 2A:15-59.1. A claim is considered frivolous when: "no rational argument can be advanced in its support"; "it is not supported by any credible evidence"; "a reasonable person could not have expected its success"; or "it is completely untenable." Belfer v. Merling, 322 N.J. Super. 124, 144 (App. Div. 1999). "[F]alse allegations of fact [will] not justify [an] award . . . unless they are made in bad faith, 'for the purpose of harassment, delay or malicious injury.'" McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 561 (1993) (quoting N.J.S.A. 2A:15-59.1(b)(1)). An honest attempt to pursue a perceived, though ill-founded, claim is not considered to be frivolous. Id. at 563. The burden of proving bad faith is on the party who seeks fees and costs. Id. at 559.

A-4946-18

Rule 1:4-8 supplements N.J.S.A. 2A:15-59.1. A Rule 1:4-8 sanction is "specifically designed to deter the filing or pursuit of frivolous litigation." LoBiondo v. Schwartz, 199 N.J. 62, 98 (2009). "For purposes of imposing sanctions under Rule 1:4-8, an assertion is deemed 'frivolous' when 'no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable.'" United Hearts, L.L.C. v. Zahabian, 407 N.J. Super. 379, 389 (App. Div. 2009) (quoting Perez, 391 N.J. Super. at 432). "Where a party has [a] reasonable and good faith belief in the merit of the cause, attorney's fees will not be awarded." Ibid. (alteration in original).

Theta sought counsel fees, asserting plaintiff moving for reconsideration did "nothing more than recycle and attempt to reargue his underlying denied motion." In his motion to quash, motion for reconsideration, and again on appeal, plaintiff continues to argue that a drawer of a dishonored check cannot assert a violation of the CCRA as a defense to a check enforcement action and lacks standing to pursue discovery in support of that defense.

In deciding Theta's motion for sanctions against plaintiff, Judge Scoca aptly stated:

> [t]o the extent that [p]laintiff yet again repeats previously-rejected arguments regarding Theta's alleged lack of standing to pursue discovery, the [c]ourt disregards such arguments in their entirety. Should

21

A-4946-18

> plaintiff continue to ignore this [c]ourt's prior rulings and burden the [c]ourt with frivolous, previously-rejected, procedurally improper arguments-rather than availing himself of the proper procedural remedies (i.e. a non-frivolous motion for reconsideration or appeal)-then plaintiff will continue to expose himself to the possibility that sanctions will be imposed.[8]

We discern no abuse of discretion in Judge Scoca's decision to sanction plaintiff by imposing attorney's fees in favor of Theta. The law firm complied with Rule 1:4-8(b)(1) and timely notified plaintiff that his motion for reconsideration was frivolous. Nonetheless, he did not withdraw or modify his motion.

To the extent we have not specifically address any remaining arguments raised by plaintiff, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[8] However, the judge agreed with plaintiff that not all of Theta's requested fees were "reasonable" under RPC 1.5(a)(1) and therefore, reduced the requested fee by fifty percent from $9750 to $5,212.50. A $50 filing fee was added to the counsel fee award resulting in the $5,262.50 total amount.

A-4946-18